**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth David TOUW,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Harry ANDERSON,
Defendant-Appellant.**

Nos. 84-5321, 84-5322.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1985.

Decided Aug. 20, 1985.

---

Elizabeth A. Hartwig, San Diego, Cal., for plaintiff-appellee.

Roger J. Diamond, Hecht, Diamond & Greenfield, Pacific Palisades, Cal., for defendant-appellant.

Before ANDERSON and TANG, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Kenneth Touw and William Anderson were convicted of conspiracy to possess and attempted possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. They appeal; we affirm their convictions, but we remand to the district court for resentencing.

## FACTS

Agents of the Drug Enforcement Administration (DEA) acted as large-scale sellers of marijuana in a "reverse undercover" investigation. The investigation targeted only high-level violations; the agents therefore refused to discuss selling small amounts of marijuana with potential violators.

In August, 1983, David Farley and defendant Touw met with DEA agents and attempted to buy five pounds of marijuana. The agents refused to sell, asserting that the amount was too small. Both before and after this meeting, Farley received many telephone calls from DEA agents. In December, 1983, the DEA destroyed their tapes of the telephone conversations and closed the case on Farley.

In March, 1984, defendant Touw called an undercover agent to find out if he still sold marijuana. When the agent told Touw that he was not interested in selling small amounts, Touw expressed interest in buying about 500 pounds. Touw telephoned defendant Anderson to arrange a meeting with agents to see some marijuana. In May, 1984, Touw and Anderson were shown about 1,000 pounds of marijuana by DEA agents, but no sale was made.

In June, 1984, Touw, Anderson and co-defendant, Daniel Kocks, an acquaintance of Anderson, were shown marijuana by DEA agents. Touw, Anderson and Kocks, after producing $117,000 for 300 pounds of marijuana, were arrested by DEA agents.

In a two-count indictment, Touw, Anderson and Kocks were charged with conspiracy to possess marijuana with intent to distribute (Count 1) and attempted possession of marijuana with intent to distribute (Count 2), all in violation of 21 U.S.C. §§ 841(a) and 846.

At the trial, both Touw and Anderson admitted that they personally used marijuana but denied that they initially intended to engage in a large transaction.

Government witnesses admitted that they called Touw at least twenty-five times between March and June, 1984. In these conversations, Touw told them that his original supply source had become unreliable, that he had purchasers in California, Oregon and Washington, and that he could store the marijuana in his garage where he had stored marijuana before.

At the trial, appellants called Farley as a witness to corroborate the defense of entrapment and Touw's testimony. The prosecutor asked for a sidebar conference and informed the court that if Farley testified, "he's going to be asked questions that are going to distinctly implicate fifth amendment rights on his part, and I think he'll

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

have a right to an attorney, because I think without one there will be a complaint waiting for him at the door of the courtroom." The defense objected and asked for an evidentiary hearing, alleging that the government was trying to intimidate Farley so that he would not testify. The court rejected both this request and a request to immunize Farley. The court then explained the situation to Farley and appointed an attorney for him.

The next day, Farley's attorney told the court that Farley would assert his "claim of privilege under the fifth amendment" but would testify if he was given immunity. The court then asked the prosecutor if she was inclined to grant immunity. She replied that she had no opportunity to speak with Farley and that she does not offer immunity when she does not know what his testimony might be. The defense requested the court to instruct the prosecutor to talk to Farley or his attorney to determine whether immunity should be granted.

The court found Farley's proposed testimony to be only remotely relevant, if at all relevant, and found no government misconduct. The court declined to order the government to grant immunity and denied a mistrial.

At the close of arguments, the defense requested the following instruction:

> Inducement by law enforcement officials may take many forms including persuasion, fraudulent representations, threats, coercive tactics, harrassment, promises of reward, or pleas based on need, sympathy or friendship.

Instead, the court instructed the jury that if the defendant was not ready or willing to break the law and the police induced him to break the law, then the police entrapped the defendant, but if the defendant was ready and willing to break the law, and if the police merely provided him an opportunity to do it, then the police did not entrap the defendant.

The jury found all three defendants guilty of both charges. The court sentenced the defendants to eighteen months in prison on Count 1 (conspiracy) and to a consecutive three-year period of probation on Count 2 (attempted possession) to follow imprisonment for Count 1. Touw and Anderson appeal; Kocks did not appeal.

## DISCUSSION

Touw and Anderson (appellants) contend that the district court erred when it refused to order immunity for Farley or to give the inducement instruction, and when the court imposed two punishments on appellants, one for conspiracy and one for attempt.

Appellants assert that the prosecutor was more interested in preventing Farley from testifying than she was in protecting his rights and that Farley should have been given immunity because his substantiation of the defendants' testimony is crucial.

In *United States v. Lord*, 711 F.2d 887 (9th Cir.1983), Cook, a defense witness in a drug trial, testified that the prosecutor stated that he might prosecute Cook depending on his testimony. The district court refused to interpret the prosecutor's statement as a grant of immunity, and Cook refused to testify. The jury convicted the defendant.

In *Lord*, we found that the prosecutor's statements to Cook raised the possibility of prosecutorial misconduct. *Id.* at 890–91. We remanded to the district court to determine whether the prosecutor deliberately caused Cook to refuse to testify.

■ We find no prosecutorial misconduct here. Unlike *Lord*, the prosecutor's statement was made to the judge and not to the witness. The prosecutor did not threaten or mislead Farley, and there was no impropriety in calling the court's attention to the dangers of a witness testifying. It was the court that decided to appoint an attorney for the witness.[1]

■ The district court did not err when it gave an entrapment instruction instead

---

1. We do not presume that a district court may grant defense witness immunity or compel the government to do so. *United States v. Mendia,* 731 F.2d 1412, 1414 (9th Cir.), *cert. denied,* ——— U.S. ———, 105 S.Ct. 509, 83 L.Ed.2d 399 (1984). We have suggested, however, that dismissal may be a proper remedy when prosecutorial misconduct creates defense witness unavailability.

of the inducement instruction requested by the defense. The instruction given is similar to one we approved in *United States v. Pico-Zazueta,* 564 F.2d 1367, 1370 n. 7 (9th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed. 544 (1978). There was no abuse of discretion here.

■ Appellants also contend that under 21 U.S.C. § 846, they may not be convicted and sentenced for both attempt and conspiracy based on one course of criminal conduct.

Section 846 reads:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

In *United States v. Taylor,* 716 F.2d 701, 712 n. 6 (9th Cir.1983), we noted that section 846 is ambiguous and that punishment for both attempt and conspiracy may be inappropriate if the defendants engaged in a single course of action. We reversed the attempt convictions on other grounds.

In a concurring opinion, Judge Fletcher stated that multiple punishments under section 846 are appropriate only if the defendant "attempts or conspires" to violate the drug laws on two or more separate occasions. *Id.* at 713.

In a recent en banc decision, we held that under 21 U.S.C. § 841(a)(1) the defendant may be convicted for both possession with intent to distribute a controlled substance and for distribution of a controlled substance even though both charges arose out of the same act. *United States v. Palafox,* 764 F.2d 558, 561 (9th Cir.1985) (en banc). In *Palafox,* the defendant distributed a sample of heroin and retained the rest with the intent to immediately distribute it to the same people at the same place and at the same time.

We noted the "strong congressional intent to criminalize all aspects of drug trafficking." *Id.* at 560. However, we found no congressional intent to punish the defendant more than once for the same criminal undertaking. *Id.* at 562. Therefore, we remanded with instructions to stay the entry of judgment and the imposition of sentence on one count.

Here, appellants engaged in a single act when they attempted to purchase marijuana from DEA agents. The government properly charged them with both conspiracy and attempt, but if convicted on both counts, the court may punish them on only one count.

We affirm the convictions but vacate the sentences with instructions to resentence each defendant on only one count.

AFFIRMED in part; REVERSED and REMANDED in part.

*Lord,* 711 F.2d at 892. There was no such misconduct here.

