977 F.2d 583
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Diane DULANEY, Marvin D. Ellis, Defendants-Appellants.
 Nos. 91-3475, 91-3476.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1992.
 
 Before RALPH B. GUY and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Defendant Diane Dulaney appeals her conviction and sentence on multiple counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2, and conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846. Defendant Marvin Ellis appeals his conviction for using and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).
 
 
 2
 Dulaney raises the following issues on appeal:
 
 
 3
 1) Whether her convictions for conspiracy to possess with intent to distribute and possession with intent to distribute the cocaine seized at 987 Lilley Avenue were supported by sufficient evidence;
 
 
 4
 2) Whether the district court erred in including the amount of cocaine seized at the 987 Lilley address in its calculation of Dulaney's base offense level under the Sentencing Guidelines; and
 
 
 5
 3) Whether the district court erred in increasing Dulaney's base offense level by two levels for possession of firearms under U.S.S.G. § 2D1.11(b)(1)?
 
 Ellis raises only one issue on appeal:
 
 6
 Whether his conviction for using and carrying a firearm in relation to a drug trafficking offense was supported by sufficient evidence?
 
 
 7
 For the reasons discussed below, we affirm Dulaney's convictions and sentence but reverse Ellis' conviction for using and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c).
 
 I.
 
 8
 A grand jury indicted Dulaney and Ellis, along with codefendants Linda Miller, Todd Scott, and Theresa Ware, in a nine-count indictment for various felony narcotic offenses. In particular, in Count One, Dulaney and Ellis were charged with conspiracy to distribute and to possess with the intent to distribute in excess of five grams of cocaine base. In Count Three, Dulaney and Ellis were charged with possessing with the intent to distribute approximately 25 grams of cocaine base on or about June 1, 1990. In Count Two, Ellis was charged with distributing cocaine base on or about May 30, 1990. In Count Four, Ellis was charged with distributing cocaine base on or about June 1, 1990. In Count Five, Ellis was charged with using or carrying a firearm in relation to a drug trafficking crime. In Count Six, Dulaney was charged with distributing cocaine base on or about August 16, 1990. Finally, in Count Nine, Dulaney was charged with distributing cocaine base on or about September 12, 1990.
 
 
 9
 Before trial, codefendants Todd Scott and Theresa Ware entered guilty pleas and agreed to testify for the government. Dulaney and Ellis pled not guilty and their cases were tried before a jury, resulting in the conviction of both defendants on all counts. Dulaney was sentenced to 228 months imprisonment on each count, to run concurrently. Ellis was sentenced to 120 months on Counts One, Two, Three, and Four, to run concurrently, and an additional 60 months on Count Five, the firearms count, to run consecutively to the sentence on the other counts, for a total sentence of 180 months. Defendant Linda Miller remains a fugitive.
 
 
 10
 The government's evidence at trial centered on several drug transactions and subsequent police raids, occurring at three different locations in Columbus, Ohio. The first two transactions occurred at 987 Lilley Avenue. On May 30, 1990, Steve Gilliam, a cooperating witness for the Columbus Police Department, went to the Lilley address and purchased .1254 gram of cocaine base with funds provided by the Columbus Police Department. Gilliam testified that defendant Ellis greeted him at the door and directed him to a person Gilliam later identified as Linda Miller from whom he purchased the cocaine. He further testified that Miller obtained the cocaine from a metal Sucrets lozenges box. Gilliam did not observe defendant Dulaney at the Lilley address during this transaction.
 
 
 11
 Gilliam returned to the Lilley address on June 1, 1990 and purchased another .1484 gram of cocaine. Gilliam again identified Miller as the seller and Ellis as the doorman. Gilliam testified that he did not see a gun in Ellis' possession at this time. Shortly after this sale, Columbus Police officers entered the Lilley address and executed a search warrant. While other officers entered the building, SWAT Officer Jack VanGundy was stationed outside. Officer VanGundy testified that while he was watching the building, he observed someone move the curtains in a second-story window on the north side of the building. Moments later, he saw a gun "in the air" outside the window but did not see the person who threw the gun.
 
 
 12
 According to Officer VanGundy, he immediately radioed the officers in the house to inform them of the gun. SWAT Officer William Germani testified that eight to ten seconds after receiving this communication, he observed defendant Ellis attempting to climb through the window from which the gun was thrown. Officer Germani also found defendant Linda Miller in the same room, several feet from the north window.
 
 
 13
 Detective Brenda Trout eventually seized the gun and turned it over to Detective Jack Wilson. The gun was identified as a loaded .38 caliber revolver. Crime lab technicians were unable to identify any fingerprints on the gun.
 
 
 14
 In addition to the gun that apparently had been thrown from the building, the police discovered another loaded .38 revolver on a desk in the living room of the apartment. The police also seized approximately 25 grams of cocaine base from the apartment.
 
 
 15
 The second series of transactions took place at 1115 McAllister in Columbus, on the 14th and 16th of August, 1990. Steve Gilliam again served as the controlled buyer. In both transactions, he purchased the cocaine with prerecorded money. Gilliam testified that defendant Dulaney sold him the cocaine on both instances and that she obtained the cocaine from a metal Sucrets box. Gilliam further testified that he had seen Dulaney in the vicinity of the 987 Lilley apartment before the McAllister transactions.
 
 
 16
 Following these transactions, police searched the McAllister address and discovered small amounts of cocaine. Police also found prerecorded funds from the August 16th transaction on Dulaney. Defendant Todd Scott and police officer Robert Meeker testified that Ellis was also at the McAllister address on August 16th.
 
 
 17
 The final controlled transaction took place at 1531 Franklin, in Columbus, on September 12, 1990. On this occasion, Columbus Police Department Narcotics Detectives purchased crack cocaine from Todd Scott. After the transaction, the police searched the residence and discovered approximately 21 grams of cocaine base, various other drug paraphernalia, including a glass tube and a crack pipe, and several Sucrets boxes. The police also seized prerecorded funds from the September 12th transaction found on Dulaney.
 
 
 18
 The government maintained at trial that the operations at these three crack houses were part of one grand criminal conspiracy, involving Dulaney, Ellis, and several others. In addition to the evidence linking the defendants to particular transactions, the government presented evidence connecting the defendants to the general conspiracy. Theresa Ware testified that she was approached by Linda Miller, who asked if she, Miller, and Dulaney could sell crack from Ware's residence on Franklin. Ware agreed and the three of them sold crack from the Franklin address for approximately three to four weeks before Ware was arrested on September 12, 1990. Ware further testified that she saw Dulaney bring a small gun into the Franklin property. Ware also implicated Ellis in the conspiracy, testifying that Ellis and Todd Scott "worked the door" at the Franklin address.
 
 
 19
 Ware also testified concerning the McAllister address. She indicated that she first became involved with Miller and Dulaney through her friend Joe Greene, who was the lessee of the McAllister address. Ware testified that in exchange for crack and cash, Greene allowed Miller and Dulaney to use the McAllister address to sell crack. She further testified that Ellis also worked with Dulaney at the McAllister address.
 
 
 20
 Todd Scott also testified for the government. He indicated that he began working for Linda Miller six months before he met Dulaney and that he worked as a "doorman" in Miller's crack houses. Scott also implicated Ellis, indicating that the two of them worked together at many of Miller's crack houses. According to Scott, both he and Ellis carried firearms while working at the crack houses and that they obtained the firearms from Dulaney and Miller.
 
 
 21
 Finally, Karen Bahsman testified for the government regarding her dealings with Miller and Dulaney. According to Bahsman, Dulaney and Miller approached her in July of 1989 regarding the purchase of Bahsman's house. Dulaney and Miller paid Bahsman an option-to-buy fee of $6,000 in cash.
 
 II.
 
 22
 We address first Dulaney's contention that her convictions on Counts One and Three were not supported by sufficient evidence. At the close of the government's case, Dulaney moved for a judgment of acquittal, with particular emphasis on Counts One and Three. In Count One, Dulaney was charged with conspiracy to possess with intent to distribute in excess of five grams of cocaine base from February, 1990 until the date of the indictment, October 19, 1990. In Count Three, she was charged with possession with intent to distribute approximately 25 grams of cocaine base on or about June 1, 1990. Although the indictment does not refer specifically to the Lilley Avenue address, the 25 grams of cocaine seized on June 1, 1990 were located at that address. The district court denied the motion. On appeal, Dulaney challenges her convictions on these counts on the ground that they were not supported by sufficient evidence.
 
 
 23
 Our review of a jury conviction is quite limited.
 
 
 24
 In determining the sufficiency of the evidence to support a guilty verdict "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 
 25
 United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)), cert. denied, 111 S.Ct. 978 (1991).
 
 
 26
 Dulaney contends that the government failed to present any evidence connecting her with the drugs seized at 987 Lilley Avenue. She therefore concludes that they failed to provide sufficient evidence to demonstrate that she knowingly possessed those drugs or knowingly participated in a conspiracy to possess those drugs.
 
 
 27
 The government responds that it presented substantial evidence that Dulaney was engaged in a criminal conspiracy with Linda Miller to sell crack cocaine from a number of houses in Columbus, Ohio. Dulaney's codefendants Todd Scott and Theresa Ware both testified that Miller and Dulaney jointly ran several crack houses. Scott also testified that Dulaney and Miller had been selling cocaine together for several months before he was arrested in August of 1990. The government maintains that this evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Dulaney was a member of a conspiracy to distribute crack in Columbus, Ohio, which included distribution of cocaine by Linda Miller at the Lilley address at the time in question.
 
 
 28
 Dulaney challenges both her substantive conviction for possession with intent to distribute and her conspiracy conviction for the same conduct. We consider the conspiracy conviction first.
 
 A.
 
 29
 To establish a defendant's participation in a drug conspiracy under 21 U.S.C. § 846, the government must prove " 'that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it.' " United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991) (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)).
 
 
 30
 Construing the evidence and all reasonable inferences therefrom in the light most favorable to the government, we find that the government presented sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Dulaney conspired with Linda Miller and others to distribute cocaine from a number of locations, including, at least, the Lilley, McAllister and Franklin properties, from as early as February of 1990. Stephen Gilliam testified that he purchased cocaine on two occasions from Dulaney at the McAllister address in August of 1990, and marked money from one of those transactions was found on Dulaney's person. Marked money from the Franklin transaction was also recovered from Dulaney. Theresa Ware and Todd Scott testified that Dulaney and Miller jointly operated a number of crack houses about this time. Scott also testified that Miller and Dulaney had been working together for several months before he was arrested in August of 1990.
 
 
 31
 Dulaney contends, however, that the government failed to present any evidence directly linking Dulaney with the Lilley address. For purposes of the conspiracy conviction, however, the government did not have to prove that Dulaney actually distributed drugs from the Lilley address. "The government need not show that a defendant participated in all aspects of the conspiracy; it need only prove defendant was a party to the general conspiratorial agreement." Barrett, 933 F.2d at 359. Although the government did not present evidence that Dulaney participated in the actual distribution of drugs from the Lilley address, it presented sufficient evidence for a reasonable jury to conclude that Dulaney was part of a general conspiracy with Miller, Ellis, and others to distribute drugs from multiple locations in Columbus, Ohio from as early as February of 1990. The government also presented evidence that drugs were distributed from the Lilley address by at least two members of the conspiracy, Miller and Ellis, on June 1, 1990, after the conspiracy with Dulaney had been formed. Finally, the government presented evidence that Dulaney was still a member of the conspiracy in August and September, when drug transactions took place at the McAllister and Franklin addresses. Taking this evidence in the light most favorable to the government, a rational jury could have concluded beyond a reasonable doubt that Dulaney was a party to a general conspiracy with Miller and the others to distribute cocaine from multiple locations in Columbus and that the operations on Lilley Avenue were part of that general conspiracy. We therefore find that Dulaney's conviction on Count One, the conspiracy count, is supported by sufficient evidence.
 
 B.
 
 32
 We turn now to Dulaney's conviction on Count Three, for possession with intent to distribute the cocaine seized at the Lilley address. As noted, the government presented no evidence placing Dulaney at or near the Lilley address at the time of any drug transaction. Stephen Gilliam testified that he saw Dulaney in the vicinity of the Lilley address some time before the drug transactions took place at the McAllister address but was unable to identify the exact date. Even taking this testimony in the light most favorable to the government, it is not sufficient for a rational jury to conclude beyond a reasonable doubt that Dulaney actually possessed the drugs at the Lilley address.
 
 
 33
 Although the government failed to present sufficient evidence that Dulaney actually possessed the drugs at the Lilley address, we must also examine the sufficiency of the evidence to support this conviction under two additional theories of liability: vicarious liability as a coconspirator, and liability as an aider and abettor.
 
 
 34
 In Pinkerton v. United States, 328 U.S. 640, 646-47 (1946), the Supreme Court held that a coconspirator can be held liable for the foreseeable criminal acts of other coconspirators that are committed in furtherance of the conspiracy and as a part of it. "A verdict on that theory," however, "requires submission of those fact issues to the jury." Nye & Nissen v. United States, 336 U.S. 613, 618 (1949). The record reveals that the jury was not instructed regarding vicarious liability for coconspirators. Therefore, Dulaney's conviction for possession of the drugs at the Lilley address may not be affirmed on that theory. Id.
 
 
 35
 We turn next to the aiding and abetting theory. The indictment charged Dulaney in Count Three with aiding and abetting in the possession of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2, and the district court instructed the jury on aiding and abetting.
 
 
 36
 A defendant may be found guilty of aiding and abetting another in a criminal venture, if she associates herself with the venture, participates in it as something that she wishes to bring about, and seeks by her acts to make it succeed. United States v. Knox, 839 F.2d 285, 294 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989). "To convict a defendant of aiding and abetting," however, the government need not show that the defendant 'participated in every phase of the criminal venture.' " United States v. Payne, 750 F.2d 844, 860 (11th Cir.1985) (citations omitted); United States v. Tzakis, 736 F.2d 867, 873 (2d Cir.1984). In this regard, the government need not present direct evidence tying the defendant to every particular criminal act involved in a criminal venture, as long as it presents sufficient evidence that the defendant aided and abetted the overall venture. See Nye & Nissen, 336 U.S. at 619.
 
 
 37
 In this case, although the government did not present evidence directly placing Dulaney at the Lilley address, it presented sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Dulaney aided and abetted the criminal venture, of which possession of the drugs discovered at the Lilley address was one part. There is evidence that Dulaney associated with Miller, Ellis, and others to distribute crack cocaine from a number of houses in the Columbus area at the time the drugs were discovered at the Lilley address, that Dulaney possessed and distributed drugs in association with Miller and the others from several other locations, and that Miller and Ellis possessed the drugs discovered at the Lilley address.
 
 
 38
 Taking this evidence in the light most favorable to the government, and drawing all reasonable inferences therefrom, we conclude that the evidence was sufficient to support Dulaney's conviction on Count Three under an aiding and abetting theory.
 
 III.
 
 39
 Dulaney also challenges her sentence in relation to Counts One and Three. The district court based its calculation of Dulaney's base offense level under the Guidelines in part on the quantity of drugs recovered at the Lilley address. Dulaney contends that the district court clearly erred in this calculation because the government presented no evidence that the distribution of cocaine at the Lilley address was within the scope of Dulaney's conspiracy with Miller. See U.S.S.G. § 1B1.3, comment. (n. 7).
 
 
 40
 Because we affirm Dulaney's convictions on the counts involving the drugs found at the Lilley address, we conclude that the district court did not err by including the quantity of those drugs in its calculation of Dulaney's sentence. See U.S.S.G. § 2d1.1(a)(3) and (c).
 
 IV.
 
 41
 We turn next to Dulaney's contention that the district court erred in increasing her base offense level by two levels under U.S.S.G. § 2D1.11(b)(1). That section provides for a two-level increase of a defendant's base offense level for a drug trafficking crime "[i]f a dangerous weapon (including a firearm) was possessed." The presentence report prepared on Dulaney recommended a two-level increase under this provision on the ground that two of Dulaney's coconspirators, Todd Scott and Marvin Ellis, possessed firearms during the course of the conspiracy. Dulaney objected to the increase, arguing that there was no evidence directly connecting firearms to her or the houses out of which she operated. The district court overruled Dulaney's objection and increased her offense level accordingly.
 
 
 42
 The district court's determination that Dulaney's coconspirator's possessed dangerous weapons during the course of the conspiracy is a finding of fact, and under the sentencing statute, this court "shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(d).
 
 
 43
 Dulaney contends that the government presented no evidence directly linking her with the use of firearms during the conspiracy. We disagree. At least one witness, Theresa Ware, testified that Dulaney brought a small revolver to the Franklin address during the course of the conspiracy. Moreover, Todd Scott testified that Dulaney gave him firearms to use in her crack houses and that both he and Ellis carried firearms in crack houses that were operated by Dulaney and Miller. Based on this evidence, the district court did not clearly err in finding that Dulaney and her coconspirators possessed firearms during the course of the conspiracy.
 
 V.
 
 44
 We examine finally Ellis' contention that his conviction for using a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c), was not supported by sufficient evidence. Following the government's case at trial, he moved for a judgment of acquittal on this count. The district court denied the motion, and the jury convicted him.
 
 
 45
 As noted, our review of the sufficiency of the evidence in support of a jury verdict is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 46
 The substantive criminal statute on the use of firearms during drug offenses provides:
 
 
 47
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years and if the firearm is a machine-gun, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.
 
 
 48
 18 U.S.C. § 924(c)(1).
 
 
 49
 This court has construed the terms of this statute "broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.) (footnote omitted), cert. denied, 493 U.S. 899 (1989). In this regard, the "uses or carries" language of the statute does not require that the defendant actually possess, brandish, or display the weapon during a particular drug transaction. Id. at 951. Rather, this court has noted that possession of a firearm falls within the provisions of § 924(c),
 
 
 50
 if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction....
 
 
 51
 United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989).
 
 
 52
 Count Five of the indictment charges that Ellis "did knowingly use and carry a firearm, that is, a .38 caliber special Interarms revolver, serial number WO72257, in relation to a drug trafficking crime." Ellis contends that the government failed to provide sufficient evidence that he possessed this particular gun during a drug trafficking crime.
 
 
 53
 The government's evidence consisted of the following:
 
 
 54
 Officer VanGundy testified that while he was watching the building during the raid of the 987 Lilley address, he observed someone move the curtains in a second story window on the north side of the building. Moments later, he saw a gun in the air outside the window. Officer VanGundy did not see, however, the person who threw the gun from the window. Officer VanGundy immediately radioed the officers in the house to inform them of the gun. Officer William Germani testified that eight to ten seconds after receiving this communication, he observed defendant Ellis attempting to climb through the window from which the gun was thrown. Officer Germani also found defendant Linda Miller in the same room, several feet from the north window, and observed a third person in the bathroom across the hall from the bedroom.
 
 
 55
 The government makes two arguments in support of Ellis' conviction on this count. It contends first that Officer Germani's discovery of Ellis in close proximity to the window from which the gun was thrown, seconds after the event, was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Ellis actually possessed the gun. Second, it argues that even if a jury could not find beyond a reasonable doubt that Ellis had actual possession of the gun, the evidence supports a finding that the gun was located in the house for the purpose of facilitating the drug transaction and that such a finding supports a conviction under § 924(c).
 
 
 56
 We are not persuaded by either of these arguments. First, a rational jury could not have found beyond a reasonable doubt that Ellis actually possessed the gun that was tossed through the window. If Ellis had been the only person discovered near the window after the gun was thrown, the government might have had a plausible argument in this regard. But another person, Linda Miller, was discovered in the same room, and still another was discovered in the room just across the hall. Although Ellis was found climbing through the window, the other individuals were close enough to the window to have thrown the gun through it and moved away during the eight to ten seconds that elapsed between the time Officer VanGundy observed the gun in the air outside the window and the time Officer Germani reached the second floor bedroom. The proximity of these individuals to the window makes it impossible, we believe, to conclude beyond a reasonable doubt that Ellis was the person who had actual possession of the gun.
 
 
 57
 The government's second argument is equally unavailing. The government contends that it did not have to present evidence that Ellis actually possessed the gun but only had to prove that the gun was under Ellis' control and available for use during the drug transaction. In this regard, the government maintains that its evidence demonstrated that Ellis was present in the same room with the gun during the course of the drug trafficking offense and that this is enough to sustain his conviction. In essence, the government argues that all it needed to show to prove that Ellis "used" or "carried" the gun for purposes of § 924(c) was that both Ellis and the gun were somehow connected to the drug transaction.
 
 
 58
 We cannot agree. Although this court has recognized that the "uses or carries" language of 18 U.S.C. § 924(c)(1) does not require actual possession, it has never held that a defendant's mere presence in the vicinity of a firearm is enough to satisfy that language. At a minimum, the court has required a showing that the firearm was under the defendant's control and in his constructive possession. See, e.g., United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989); United States v. Acosta-Cazares, 878 F.2d 945, 951-52 (6th Cir.1989), cert. denied, 493 U.S. 899 (1989). In Henry, for example, the court noted that
 
 
 59
 if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to" a drug trafficking crime.
 
 
 60
 878 F.2d at 944 (emphasis added) (citations omitted). Similarly, in Acosta-Cazares, the court rested its decision on the fact that the firearms were found on premises under the defendant's control. 878 F.2d at 952.
 
 
 61
 Here, by contrast, the government presented no evidence that Ellis controlled or owned the premises on which the gun was found. As a result, no rational trier of fact could have concluded beyond a reasonable doubt that Ellis constructively possessed the gun. Absent sufficient evidence of either actual or constructive possession of the gun by Ellis, the government failed to prove that Ellis "used" or "carried" this particular firearm during and in relation to the drug trafficking offense. Henry, 878 F.2d at 944; see also United States v. Long, 905 F.2d 1572, 1576-77 (D.C.Cir.), cert. denied, 111 S.Ct. 365 (1990).[1] We therefore reverse Ellis' conviction on Count Five, for using or carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).
 
 VI.
 
 62
 In summary, we AFFIRM Dulaney's convictions and sentence, but REVERSE Ellis' conviction on the firearms charge and REMAND his case for resentencing.
 
 
 63
 CONTIE, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 64
 In regard to defendant Dulaney, I believe there is insufficient evidence to sustain a conviction on count three for possession with intent to distribute approximately 25 grams of cocaine on June 1, 1990 at 987 Lilley Avenue. Dulaney was not present at the Lilley Avenue residence when the police conducted controlled buys there on May 31 and June 1, 1990. The majority argues that the conviction for possession may be sustained under an aiding and abetting theory. I disagree. The prosecution failed to address any questions about defendant Dulaney and the Lilley Avenue residence to coconspirators Todd Scott and Theresa Ware, who had agreed to cooperate with the government. As a consequence, absolutely no evidence was presented at trial to link Dulaney to the Lilley Avenue residence except for the remark of one policeman saying Dulaney was once seen on an unknown date on the street outside the house. I do not believe that a reasonable juror could reasonably infer from this one fact that Dulaney therefore aided and abetted in the possession of the cocaine that was found at the Lilley Avenue residence on June 1, 1990.
 
 
 65
 This court has stated in an en banc opinion that attempts and conspiracies are inchoate crimes and therefore "not of the same character" as a substantive possession offense. United States v. Davern, No. 90-3681, slip op. at 7 (6th Cir. July 21, 1992). In the present case, I believe the majority is implying that because Dulaney was a member of a conspiracy with Miller and Ellis, who were present at 987 Lilley Avenue on June 1, 1990, she may be charged with any cocaine they possessed as an aider and abettor. I disagree. A defendant may be found guilty of the crime of aiding and abetting a criminal venture, if the defendant associates herself with the venture in a manner whereby she participates in it as something she wishes to bring about and seeks by her acts to make succeed. United States v. Knox, 839 F.2d 285, 294 (6th Cir.1988). The specific venture which defendant is charged with in count three is not a conspiracy but possession of 25 grams of cocaine found at 987 Lilley Avenue on June 1, 1990. To sustain a conviction for aiding and abetting this specific venture, the government must demonstrate that Dulaney associated herself with the venture and participated in it in some way. "To prove participation, the evidence must show that the defendant committed an overt act designed to aid in the success of the venture." United States v. Payne, 750 F.2d 844, 860 (11th Cir.1985). In the present case, no such evidence exists. There is no evidence that Dulaney was associating with Miller and Ellis on June 1, 1990 or that she committed an overt act in regard to the 25 grams of cocaine that were found at 987 Lilley Avenue on that date. There is no evidence to establish that Dulaney was ever involved in the distribution of drugs from 987 Lilley Avenue or that this particular residence was one of the crack houses that she and Miller operated together. Because the government failed to question any witness about whether Dulaney had anything to do with the Lilley Avenue residence or whether Lilley Avenue was one of the houses from which she and Miller distributed crack, the government failed in its burden of proof. Instead, the Lilley Avenue possession charge in regard to defendant Dulaney was completely ignored at trial. A vague statement by coconspirator Scott that Dulaney and Miller had been selling cocaine together for several months is insufficient to establish that each time Miller possessed cocaine, Dulaney necessarily aided and abetted in the possession. Otherwise, there would be no distinction between the crimes of conspiracy and of aiding and abetting. Dulaney's conviction on count three for possession and intent to distribute approximately 25 grams of cocaine on June 1, 1990 should be reversed.
 
 
 66
 In regard to defendant Ellis, I believe that his conviction for using and carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) should be affirmed.
 
 
 67
 Defendant Ellis argues that there is insufficient evidence to sustain a conviction because the gun at issue was not found in the same room as himself at the Lilley Avenue residence, but was found outside on the ground, and it cannot be proven beyond a reasonable doubt that he was the one who threw the gun out of the window when there were two other people nearby who could have thrown the gun.
 
 
 68
 I disagree. First, defendant Ellis was the one seen attempting to climb out of the same window from which the gun was thrown about ten seconds after it was thrown. Construing this evidence in favor of the government, it can be concluded that Ellis was the one who threw the gun. Other facts supporting his conviction for this offense are as follows: defendant Ellis was identified as the doorman at 987 Lilley Avenue, Apartment C, Columbus, Ohio, on both May 30 and June 1, 1990. According to the testimony of coconspirator Scott, Ellis carried firearms on several occasions in his role as doorman. Given the rapid succession of events following the SWAT entry at 987 Lilley Avenue, the jury could reasonably infer that Marvin Ellis, who a few hours earlier had acted as doorman, threw the revolver out the only open window, the north window, and then tried to jump out the same window. The only other occupant of the room was found near the west window and all other windows besides the north window were closed.
 
 
 69
 Thus, the fact that the loaded .38 caliber firearm recovered outside the house was not found in the room where the drug transactions were made does not preclude the possibility that a drug dealer intended to use it to support narcotics operations. See United States v. Lyman, 892 F.2d 751, 754 (8th Cir.1989), cert. denied, 111 S.Ct. 45 (1990). Actual possession of a firearm need not be shown, "only that the firearm was under defendant's control and readily accessible." United States v. Pearce, 912 F.2d 159, 162 (6th Cir.1990), cert. denied, 111 S.Ct. 978 (1991). Defendant seems to be arguing that there are alternative theories of how the gun was thrown. However, this does not preclude a juror from finding defendant Ellis guilty beyond a reasonable doubt. The district court correctly denied defendant Ellis' motion for judgment of acquittal and sustained his conviction for using or carrying a firearm in connection with a drug trafficking offense.
 
 
 70
 To conclude, I concur in Parts I, IIA, and IV of the majority opinion. I dissent from Parts IIB, III and V. The conviction of Dulaney on count III for possession with intent to distribute approximately 25 grams of cocaine on June 1, 1990 at 987 Lilley Avenue should be reversed. The conviction of defendant Ellis for using or carrying a firearm in connection with a drug trafficking offense should be affirmed.
 
 
 
 [1]
 We note that the government's evidence may well have supported a conviction on this count under a theory of vicarious liability. In this regard, "a defendant involved in a conspiracy, regardless of whether he has possessed a firearm, can be punished as a principal based on the rule of vicarious liability for coconspirators." Long, 905 F.2d at 1577 n. 8. The evidence in this case supports a conclusion that at least one of the coconspirators "used" the firearm in question in relation to the drug trafficking crime and that such conduct was reasonably foreseeable. However, as noted above, "[a] verdict on that theory requires submission of those fact issues to the jury." Nye & Nissen v. United States, 336 U.S. 613, 618 (1949). The record reveals that the jury was not instructed regarding vicarious liability for coconspirators. Therefore, the verdict cannot stand on that theory