4 F.3d 1338
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sabrina JENKINS (91-3553); Reginald Peacock (91-3554);
Michael Warren (91-3555); Vincent Sample (91-3562);
Michael Brown (91-3563); Ned Warren, III (91-3564); and
Ralph D. Warren (91-4129), Defendants-Appellants.
 Nos. 91-3553 to 91-3555, 91-3562 to 91-3564 and 91-4129.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 17, 1992.
Decided Aug. 20, 1993.
Rehearing En Banc Denied in Nos.
91-3554, 91-3564, and 91-4129
Oct. 21, 1993.
 
 1
 Joseph R. Wilson, Asst. U.S. Atty., Thomas A. Karol, Asst. U.S. Atty. (briefed), Office of U.S. Atty., Western Div., Toledo, OH, for plaintiff-appellee.
 
 
 2
 Richard A. Nystrom (argued and briefed), Dayton, OH, for defendant-appellant Michael Joseph Warren.
 
 
 3
 Douglas A. Wilkins (argued and briefed), Toledo, OH, for defendant-appellant Reginald Peacock.
 
 
 4
 Gordon A. Senerius (argued and briefed), Toledo, OH, for defendant-appellant Sabrina Jenkins.
 
 
 5
 E. Winther McCroom (argued and briefed), Breckenridge & McCroom, Youngstown, OH, for defendant-appellant Vincent Sample.
 
 
 6
 Mark D. Berling (briefed), Toledo, OH, for defendant-appellant Michael Brown.
 
 
 7
 Michael G. Dane (argued and briefed), Federal Public Defender's Office, Cleveland, OH, for defendant-appellant Ralph Darrell Warren.
 
 
 8
 William S. O'Brien (argued and briefed), Findlay, OH, for defendant-appellant Ned Warren, III.
 
 
 9
 Before: KEITH and SUHRHEINRICH, Circuit Judges, and JOINER, Senior District Judge.*
 
 
 10
 JOINER, Senior District Judge.
 
 
 11
 Following trial by jury, defendants Ralph Warren; Ned Warren, III; Michael Warren; Michael Brown; Sabrina Jenkins; Reginald Peacock; and Vincent Sample were convicted of conspiracy to distribute cocaine under 21 U.S.C. Secs. 846 and 841(b)(1)(B). Six defendants were convicted of substantive counts relating to the possession and sale of cocaine under 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. Ralph Warren was also convicted of engaging in a continuing criminal enterprise under 18 U.S.C. Sec. 848;[1] firearms charges under 18 U.S.C. Secs. 922 and 924; and possession of cocaine with intent to distribute within 1000 feet of an elementary school under 21 U.S.C. Secs. 860 and 841(a)(1).
 
 
 12
 Defendants were indicted along with six other persons in a 27-count indictment in October 1989. The court conducted two two-month trials, first in 1990, and then again in 1991 after the jury was unable to reach a unanimous verdict on all of the counts. Defendants raise numerous issues on appeal, most of which do not merit publication under Rule 24(a) of the Sixth Circuit Court of Appeals. Those issues are addressed and decided in the unpublished appendix to this opinion. We limit our discussion below to the following issues: whether the district court erred in refusing to order the disclosure of a confidential informant; whether the enhanced sentence of life imprisonment was properly imposed for Ralph Warren's violation of 21 U.S.C. Sec. 860; whether the exclusionary rule prohibits consideration of illegally seized cocaine in the calculation of a defendant's offense level under the sentencing guidelines; and whether a conspirator is properly found accountable for the full amount of the drugs involved in the conspiracy based solely on a finding that the amount involved was foreseeable to him.
 
 I.
 Confidential Informant
 
 13
 Ralph Warren, Reginald Peacock and Vincent Sample claim that the district court erred in refusing to order the disclosure of the identity of a confidential informant. The informant accompanied undercover detectives on three occasions to purchase drugs from defendant Michael Brown. On the first two occasions, the informant merely drove the detectives to Brown's house. On the third occasion, the informant again drove to Brown's house with the detectives, and then, at Brown's direction, to two other locations so that Brown could obtain cocaine. Both undercover detectives testified that during this drive, Brown stated: that he was just with Ralph and "he sold an ounce and a half and they had two kilos"; that the "house on Melrose is Ralph's, and that's where the rocks are at and it is being run by Reggie Peacock"; and that "Ralph was his main man, and he didn't like doing business with Peanut [Ned Warren]." Brown testified at trial and denied making the statements attributed to him by the detectives.
 
 
 14
 The role of the informant was extremely limited. There was no evidence of any attempted drug purchase by the informant, nor of any conversations between the informant and the defendants. The informant merely drove the car as directed by Michael Brown. While driving the car, however, he was presumably in a position to hear Brown's statements regarding Ralph Warren and Peacock.
 
 
 15
 With the undercover detective present, the district judge conducted an in camera interview of the informant during the first trial, and asked him questions that had been submitted by the defendants. Peacock did not submit any questions. The judge took notes, and read the questions and answers into the record. The judge offered to read the interview to the jury if all defendants agreed. Since they did not all agree, this was not done. The court refused to require the government to disclose the informant's identity, and stated:
 
 
 16
 Except perhaps for one question and answer in that entire interview, this interview corroborates [the detective] in very important respects, even down to the amount of money that he received as an informant.
 
 
 17
 ....
 
 
 18
 I make this very positive finding, that it would not assist the defendants, on the contrary it would confirm [the detective's] testimony at all of the important points, certainly, every aspect of the various transactions he confirmed.
 
 
 19
 There is only one point at which there might be any help to Ralph Warren, and that is this question and answer ... "What, if anything, do you recall Michael Brown saying in the car about Ralph Warren?"
 
 
 20
 And the answer, and I have it in quotes "I don't remember him in my presence mention Ralph Warren."
 
 
 21
 The court stated that it would allow any defendant to cross-examine the detective on the informant's failure to remember Brown's statements about Ralph Warren. "And counsel is entitled to use that or any other part of that interview in cross-examination of [the detective]."
 
 
 22
 The Supreme Court has recognized the government's privilege not to reveal the identity of persons who furnish information regarding violations of the law. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege is especially important in the enforcement of controlled substance laws where there is usually no complaining witness. United States v. Lloyd, 400 F.2d 414, 415 (6th Cir.1968). The privilege has limits, however. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro, 353 U.S. at 60-61, 77 S.Ct. at 628.
 
 
 23
 We review the district court's refusal to order the disclosure or production of the confidential informant under an abuse of discretion standard. United States v. Moore, 954 F.2d 379, 381 (6th Cir.1992) (citing Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989)). The Sixth Amendment does not require the government to call every witness competent to testify, including special agents or informants. Moore, 954 F.2d at 381. If the evidence on which the defendant was convicted was obtained personally by the government agents who did testify, the government is not required to produce the cooperating individual. Mere invocation of the right to compulsory process does not automatically outweigh the public interest in protecting confidential informants. "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." Id.
 
 
 24
 The district court found that in every respect save one, the informant would have corroborated the undercover detectives' testimony. The question is whether the district court was required to order the disclosure of the informant's identity in light of its acknowledgement that the informant's failure to remember Brown's statements about Ralph Warren might have been of help to Warren. The answer to this question is no. The district court correctly accommodated the government's privilege to protect the identity of its informant with any interest Warren might have had in personally interrogating the informant.[2]
 
 
 25
 Essential to our determination is the fact that Warren was not prohibited from presenting to the jury the fact that an informant who was present to hear Brown's alleged statements about him did not recall those statements. This was the only subject on which the informant could have been of help, and Warren makes no persuasive showing to the contrary. The court stated that it would permit Warren to cross-examine the undercover detective on the informant's inability to remember the contested statements. This, coupled with the fact that Brown himself denied making the statements, was sufficient to address the issue of whether the statements had in fact been made. Moreover, while the court allowed defendants to explore the informant's faulty memory through cross-examination of the detective, the court stated that the government would not be allowed to examine the detective on redirect to establish those facts which the informant did remember.
 
 
 26
 We remain mindful of the Supreme Court's admonition in Roviaro:
 
 
 27
 [N]o fixed rule with respect to disclosure of an informant's identity is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 28
 353 U.S. at 62, 77 S.Ct. at 628 (emphasis added). We believe that the district court struck the proper balance and conclude that the court did not abuse its discretion in refusing to require the disclosure of the informant's identity.
 
 II.
 Statutory Sentencing Issues
 
 29
 Ralph Warren challenges his sentence to life imprisonment for his conviction of the offense charged in count 8, possession of 112 grams of cocaine with intent to distribute within 1000 feet of an elementary school, in violation of 21 U.S.C. Secs. 841(a)(1) and 860. This enhanced sentence was imposed because Warren had two prior state law drug felony convictions. Warren's challenge presents two issues: 1) whether a term of life imprisonment is required for a conviction of Sec. 860 where the defendant was previously convicted of two drug felonies under statutes other than Sec. 860; and 2) whether Warren is barred from challenging the constitutionality of his 1981 conviction under 21 U.S.C. Sec. 851(e). We answer both questions in the affirmative.
 
 
 30
 A. Construction of 21 U.S.C. Secs. 860 and 841(b)(1)(A
 
 
 31
 Section 860(a) sets forth the penalty for violations of 21 U.S.C. Sec. 841(a)(1) which occur within 1000 feet of certain institutions. In general, that penalty is twice the maximum punishment and twice the term of supervised release provided for in 21 U.S.C. Sec. 841(b).[3] However, the reference in Sec. 860(a) to twice the penalty imposed by Sec. 841(b) is expressly subject to the terms of 21 U.S.C. Sec. 860(b), which allows for greater penalties.
 
 
 32
 Section 860(b) first sets forth the penalty applicable to a person who violates Sec. 841(a)(1) by possessing a controlled substance with intent to distribute within 1000 feet of one of the listed institutions, "after a prior conviction under subsection (a) [Sec. 860(a) ] of this section has become final...." (Emphasis added.) Thus, by its terms, the first part of Sec. 860(b) applies only to defendants who are twice convicted of Sec. 860(a). Section 860(b) concludes: "Penalties for third and subsequent convictions shall be governed by section 401(b)(1)(A) [Sec. 841(b)(1)(A) ]." Warren contends that this language must be read in conjunction with the earlier reference in Sec. 860(b) to a prior conviction under Sec. 860(a). If these sentences are read together, he claims, only third and subsequent convictions for violations of Sec. 860(a) result in the harsh penalties imposed by Sec. 841(b)(1)(A).
 
 
 33
 The construction to be given to the last sentence of Sec. 860(b) is clear from the provisions of Sec. 841(b)(1)(A), to which Sec. 860(b) expressly refers. In pertinent part, Sec. 841(b)(1)(A) states:
 
 
 34
 If any person commits a violation of this subparagraph or of section [distribution to persons under age 21], [distribution near schools], or [employment of persons under age 21] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.... For purposes of this subparagraph, the term "felony drug offense" means ... a felony under any law of a State ... that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances.
 
 
 35
 This language clearly provides that a person who violates Sec. 860 after having been convicted of two prior drug felonies, under certain federal laws or the state laws identified above, are subject to the penalty provisions of Sec. 841(b)(1)(A). Nothing in the language of Sec. 860(b) or Sec. 841(b)(1)(A) requires that the predicate offenses under the latter section be offenses under Sec. 860(a). See United States v. Blackwood, 913 F.2d 139, 147 (4th Cir.1990), where the court noted that "Congress denominated Sec. 6452 of the Anti-Drug Abuse Act, which created this mandatory life sentence, 'Life in Prison for Three-Time Drug Offender.' " (Emphasis in original.) We therefore conclude that a term of life imprisonment is mandated under Secs. 860(b) and 841(b)(1)(A) so long as the two necessary drug felony predicate offenses are established, and that these offenses need not be violations of Sec. 860 as Warren contends.
 
 
 36
 B. Use of Prior Convictions for Sentence Enhancement
 
 
 37
 The procedures for establishing prior convictions for purposes of sentence enhancement are set forth in 21 U.S.C. Sec. 851, enacted in 1970. That statute requires the government to file an information stating the prior convictions to be relied upon. 21 U.S.C. Sec. 851(a). A person claiming that a conviction is invalid must file a written response to the information. The factual bases for a challenge to the constitutionality of a prior conviction must be set forth in the response, and the defendant bears the burden of proof by a preponderance of the evidence on any issue of fact raised in his response. 21 U.S.C. Sec. 851(c). Subsection 851(e) provides that no person may challenge the validity of any conviction which occurred more than five years before the date of the information alleging the prior conviction.
 
 
 38
 The government filed the information required by Sec. 851(a), establishing that Warren had been convicted of drug felonies under Ohio law in 1981 and 1986. At sentencing, Warren contended that his 1981 conviction should not be used for sentence enhancement because he was not afforded effective assistance of counsel, and that a search for other alleged constitutional errors was not possible because the court reporter's notes had been partially destroyed.[4] Warren states that his only other "enhancement-usable conviction" was the result of his guilty plea in 1986 to a drug misdemeanor under Ohio law which was elevated to felony status by virtue of his 1981 conviction.
 
 
 39
 The court concluded that the five-year limitation in Sec. 851(e) barred Warren's challenge to his 1981 conviction. The court found that Sec. 851(e) was wholly reasonable both to effectuate the purposes of sentence enhancement for recidivists and to eliminate a host of problems with respect to ancient or destroyed records. Cirillo v. United States, 666 F.Supp. 613, 616 (S.D.N.Y.1987). The court further found Warren's complete failure to exhaust his state remedies to be an additional reason for rejecting Warren's objections to the use of the convictions for sentence enhancement.[5]
 
 
 40
 We agree with the district court's conclusion that Sec. 851(e) bars Warren's challenge to his 1981 conviction, as it occurred nearly 10 years before the government filed its information under Sec. 851(a). While Warren made a general objection to application of Sec. 851(e) at sentencing, he advances no arguments[6] to this court against application of the time limitations of Sec. 851(e). We therefore conclude that Warren's prior felony drug offenses were properly used for sentence enhancement and affirm his sentence.III.
 
 Sentencing Guideline Issues
 A. Applicability of the Exclusionary Rule
 
 41
 Reginald Peacock contests the inclusion of 103.79 grams of cocaine base (converted to 10,379 grams of cocaine for sentencing purposes) confiscated from his Delaware house. Robert McCoy testified at the first trial that he was with Peacock at the house and observed Peacock cooking up cocaine. When McCoy left the house, he immediately saw police officers and fled. The police then searched the house and found a mason jar containing the crack cocaine. Evidence concerning the mason jar of crack cocaine was admitted at the first trial, but the jury was unable to reach a verdict on the count involved. Prior to the second trial, Peacock moved to suppress the cocaine on the grounds that the search was unconstitutional. The district court agreed and suppressed the evidence. Both Peacock and Ralph Warren were acquitted on the charge involving this cocaine at the second trial.[7]
 
 
 42
 The district court included the crack cocaine in the total amount of cocaine attributable to the conspiracy for purposes of calculating defendants' offense levels under the sentencing guidelines. The court held that the exclusionary rule did not apply even though it had ruled that the search was unconstitutional. We agree.
 
 
 43
 The courts of appeals for four circuits have held that illegally seized evidence, though inadmissible at trial, may nonetheless be considered in determining a defendant's offense level. United States v. Tejada, 956 F.2d 1256, 1260-64 (2d Cir.), cert. denied, --- U.S. ----, ----, 113 S.Ct. 124, 334, 121 L.Ed.2d 80 (1992); United States v. Lynch, 934 F.2d 1226, 1234-37 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); United States v. McCrory, 930 F.2d 63, 67-69 (D.C.Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); United States v. Torres, 926 F.2d 321, 322-25 (3d Cir.1991). See also United States v. Jessup, 966 F.2d 1354 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1398, 122 L.Ed.2d 772 (1993) (defendant properly denied two-point reduction for acceptance of responsibility based on information obtained by the government in violation of state law on medical privilege). Contra United States v. Jewel, 947 F.2d 224, 238-40 (7th Cir.1991) (Easterbrook, J., concurring). In reaching their conclusions, these courts have addressed both the objectives of the exclusionary rule and the deleterious effects of an overly broad application of that rule.
 
 
 44
 In Tejada, the Court of Appeals for the Second Circuit concluded that illegally seized evidence must be considered under the sentencing guidelines absent a showing that the police officers obtained the evidence expressly to enhance a sentence. The court followed the Supreme Court's instruction to balance the likelihood that excluding the evidence would deter illegal searches against the "considerable cost of excluding reliable information." Tejada, 956 F.2d at 1261 (citing Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 1165, 94 L.Ed.2d 364 (1987)).
 
 
 45
 Physical evidence seized in violation of the Fourth Amendment--unlike an involuntary confession taken in violation of the Fifth Amendment--is inherently reliable.... As a result, balancing requires that we invoke the exclusionary rule only where our doing so will provide the systemic remedy of substantial deterrence.
 
 
 46
 Tejada, 956 F.2d at 1261 (citations omitted). The court was not willing to assume that allowing illegally obtained evidence to be considered at sentencing would provide greater incentives to police to violate the Fourth Amendment. Id. at 1262. Nor was the court willing to leave the consideration of such evidence to the discretion of the district courts, stating that such a rule would run counter to the sentencing guidelines' goal of avoiding disparities in sentencing. Id. at 1263.
 
 
 47
 In McCrory, the Court of Appeals for the District of Columbia stressed the need for the sentencing court to have the fullest information available to fashion the appropriate sentence, and noted that the sentencing guidelines provide that the sentencing court may consider, without limitation, any information concerning the background, character or conduct of the defendant. McCrory, 930 F.2d at 68. The court concluded that the deterrent effect of the exclusionary rule did not outweigh the "detrimental effects of excluding reliable evidence on the court's ability to achieve the goal of appropriate sentencing." Id. at 69. Accord Torres, 926 F.2d at 325; Lynch, 934 F.2d at 1236.
 
 
 48
 The approach of the courts which have addressed this issue differs in one important respect. In Tejada, the court set forth an exception to its conclusion that illegally seized evidence must be considered at sentencing, stating that evidence illegally seized for the purpose of sentence enhancement may not be so used. Tejada, 956 F.2d at 1263. In McCrory, Torres and Lynch, the courts expressly left open the question whether the exclusionary rule should apply in sentencing proceedings to evidence unconstitutionally seized for the purpose of sentence enhancement. McCrory, 930 F.2d at 69; Lynch, 934 F.2d at 1237 n. 15; Torres, 926 F.2d at 325.
 
 
 49
 Following the reasoned approach of these courts, we conclude that the district court was not required to exclude the mason jar of crack cocaine from the total amount of cocaine attributable to this conspiracy on the ground that the cocaine was obtained during a search later found to be unconstitutional.[8] There is no indication in the record that this evidence was obtained to enhance defendants' sentences. Nor do any of the defendants advance this claim. On the facts of this case, inclusion of the crack cocaine was proper.
 
 
 50
 B. Vincent Sample: Amounts of Cocaine Attributable Under Guideline Section 1B1.3
 
 
 51
 Vincent Sample challenges the district court's conclusion that he is accountable for the total amount of cocaine involved in the conspiracy, 21.96 kilograms, based on the finding that Sample reasonably could have foreseen that the conspiracy was selling cocaine in this amount. Sample's base offense level was initially calculated at 34, and then reduced by two points for his minor role in the offense, resulting in a sentencing range of 121-151 months. The court imposed a sentence of 125 months.
 
 
 52
 The relevant conduct required to be considered by the district court at the time of sentencing was that set forth in U.S.S.G. Sec. 1B1.3 (1989) and its accompanying commentary. That guideline defines relevant conduct to include acts or omissions for which the defendant would be otherwise accountable, that occurred during the offense of conviction, or were in furtherance of the offense. Application note 1 states that conduct for which a defendant is "otherwise accountable" includes conduct of others in furtherance of jointly undertaken criminal activity that was reasonably foreseeable by the defendant.
 
 
 53
 A district court's findings of fact on the amount of cocaine for which a defendant is to be held accountable are accepted by this court unless the findings are clearly erroneous. United States v. Wilson, 954 F.2d 374, 376 (6th Cir.1992); United States v. Walton, 908 F.2d 1289, 1300-1301, (6th Cir.), cert. denied, 498 U.S. 906, 989, 990, 111 S.Ct. 273, 530, 532, 112 L.Ed.2d 229, 541, 542 (1990). The findings must generally be supported by a preponderance of the evidence. Walton, 908 F.2d at 1301. Further, we give deference to the district court's application of the sentencing guidelines to the facts. Wilson, 954 F.2d at 376 (citing 18 U.S.C. Sec. 3742(e)).
 
 
 54
 Vincent Sample does not challenge the district court's finding of the total amount of cocaine attributable to the conspiracy. Rather, he contends that the only amount properly attributable to him is 7.19 grams, the amount of cocaine he sold to Michael Brown.[9] Sample claims he had no knowledge of, nor could he reasonably foresee, the quantity of cocaine which the district court found to be involved in the conspiracy.
 
 
 55
 A co-conspirator is not necessarily responsible for the total amount of cocaine involved in the conspiracy for purposes of establishing his base offense level. Rather, a participant is responsible for other conspirators' conduct only if that conduct was reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity. U.S.S.G. Sec. 1B1.3, comment. (n. 1) (1989); United States v. Sims, 975 F.2d 1225, 1244 (6th Cir.1992), cert. denied, --- U.S. ----, ----, ----, 113 S.Ct. 1315, 1617, 1620, 122 L.Ed.2d 702 (1993); United States v. Hodges, 935 F.2d 766, 774 (6th Cir.), cert. denied, --- U.S. ----, ----, 112 S.Ct. 251, 317, 116 L.Ed.2d 206 (1991). In this case, the government conceded that the evidence did not show that Sample was a "major player," and that "he probably did not possess the same knowledge of the overall conspiracy as the other defendants." The government nonetheless contended that Sample "would have been aware that 5 to 15 kilograms were sold by his co-conspirators or by him during the conspiracy period."
 
 
 56
 The district court marshalled the evidence supporting the conclusion that Sample "certainly could have reasonably foreseen that Ralph Warren's distribution network, of which he was a part, was selling cocaine in this quantity [the full 21.96 kilograms]." Based on this finding, the court concluded that the entire amount of cocaine was properly attributable to Sample for sentencing purposes.
 
 
 57
 The court's finding of foreseeability is not clearly erroneous. However, foreseeability is only one of the limitations on the ability of the court to charge one participant in a conspiracy with the conduct of the other participants. It has been argued that foreseeability alone provides scant practical limitation. "In the case of heroin and cocaine, each seller knows that every transaction requires an extensive network of importers and distributors handling large quantities." Stephen J. Schulhofer, Excessive Uniformity--And How to Fix It, 5 Federal Sentencing Reporter 169, 170 (1992). Another limitation on the court's ability to charge a defendant with the conduct of others is that the conduct must be in furtherance of the execution of the "jointly undertaken criminal activity."
 
 
 58
 The 1992 amendment to U.S.S.G. Sec. 1B1.3 and its commentary "clarifies and more fully illustrates the operation of this guideline." U.S.S.G., App. C. amend. 439. We have previously looked to post-sentencing clarifying amendments to ascertain the proper interpretation and application of the guidelines. United States v. French, 974 F.2d 687, 699 (6th Cir.1992), cert. denied, --- U.S. ----, ----, 113 S.Ct. 1012, 1431, 122 L.Ed.2d 160 (1993); United States v. Muhammad, 948 F.2d 1449, 1457-58 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). We do so again in this case.
 
 
 59
 Sentencing guideline section 1B1.3 (1992) provides that in the case of jointly undertaken criminal activity (whether or not charged as a conspiracy), the base offense level shall be determined on the basis of all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. U.S.S.G. Sec. 1B1.3(a)(1)(B). This version of the guideline incorporates the language of application note 1 to section 1B1.3 (1989), and does not reflect a change in the operation of the guideline. Application note 2 to section 1B1.3 (1992) states:
 
 
 60
 Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).
 
 
 61
 (Emphasis added.)
 
 
 62
 In this case, the district court did not address, implicitly or explicitly, the scope of the criminal activity Vincent Sample agreed to jointly undertake. Without such a finding, we lack an adequate basis on which to differentiate between Sample and other members of the Ralph Warren conspiracy. However, section 1B1.3, in both its 1989 format and as recently amended in 1992, instructs that differentiation between co-conspirators is required. For this reason, we reverse Vincent Sample's sentence and remand his case for resentencing, to give the district court an opportunity to address the criteria of U.S.S.G. Sec. 1B1.3 and determine the scope of the criminal activity Vincent Sample agreed to undertake.
 
 Conclusion
 
 63
 It is apparent from the record in this case that the trials were difficult and required the best of judicial talent. Our system of justice is fortunate to have available to it the valuable services of its senior judges, in this case, Senior Judge William Thomas.
 
 
 64
 For the reasons stated herein, we conclude that the district court did not err in refusing to order the disclosure of the identity of the confidential informant, and decline to reverse the convictions of defendants Ralph Warren, Reginald Peacock and Vincent Sample on this basis. We AFFIRM the sentences of Ralph Warren and Reginald Peacock. We VACATE the sentence of Vincent Sample and REMAND his case for RESENTENCING, consistent with this opinion.
 
 
 65
 KEITH, Circuit Judge, concurring in part and dissenting in part.
 
 
 66
 While I concur in Sections I, II, III.B. of the majority opinion, I must dissent from this court's exclusionary rule analysis in section III.A. of the majority opinion.
 
 
 67
 It is axiomatic that the exclusionary rule applies to suppress the presentation of evidence seized in violation of the Fourth Amendment. Placing unnecessary emphasis on the subjective intent of police officers who seize evidence, the majority, however, concludes that this suppressed evidence may be utilized in the calculation of a sentence under the sentencing guidelines. The majority holds that, if it can be shown that the suppressed evidence was seized for the express purpose of enhancing the sentence, then the evidence should be excluded. Absent a showing that the police officers intentionally violated the fourth amendment, the majority rationalizes that the deterrence rationale of the exclusionary rule is not satisfied and thus the evidence may be used.
 
 
 68
 I disagree and find compelling Judge Easterbrook's discussion of the purpose and application of the exclusionary rule in United States v. Jewel, 947 F.2d 224, 238-40 (7th Cir.1991) (Easterbrook, J., concurring). There, Judge Easterbrook instructs:
 
 
 69
 As for doctrine: the fourth amendment establishes an objective standard. I think it most unlikely that the Supreme Court will admit intent through the back door in deciding whether to apply the exclusionary rule. Application is categorical: the exclusionary rule applies, or it doesn't, to one or another juncture of litigation.... Not one of the Supreme Court's opinions implies that the rule may apply when the police have one motive and dissolve when the police have a different one.... Evidence seized on the authority of a warrant is admissible unless the warrant was so weak that reliance was "objectively" unreasonable, or unless the officers procuring the warrant misrepresented or withheld material facts. Neither of the exceptions makes anything of intent. The exclusionary rule is a prophylactic: it applies across the board in situations where the incentives for the police and the deterrence provided by the rule are such that exclusion is required and without reference to what motivated the particular search in issue.
 
 
 70
 Id. at 239 (citations omitted).
 
 
 71
 By engaging in a subjective intent inquiry, the majority indeed makes "serious inroads" into the exclusionary rule and ultimately the protections afforded by the fourth amendment. See id. Specifically, the majority undermines the warrant requirement and lessens the general public's protection from unreasonable police seizures. Accordingly, I would remand the case for resentencing and exclude the illegally seized evidence from the calculation.
 
 
 72
 LOWS******
 
 APPENDIX
 
 73
 "Unpublished Appendix to Published Opinion"
 
 
 74
 "NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing resjudicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit."
 
 
 75
 "(The unpublished appendix appears here following the text of the published opinion.")
 
 
 76
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and JOINER, Senior District Judge.*
 
 
 77
 CHARLES W. JOINER, Senior District Judge.
 
 
 78
 This appendix to the published decision addresses defendants' challenges to the sufficiency of the evidence and the district court's rulings concerning the admissibility of co-conspirator statements, refusal to sever the trial of one defendant, evidentiary rulings and sentencing guideline determinations. We affirm the convictions of all defendants and the sentence of Ned Warren. We vacate the sentence of Michael Warren, and remand for resentencing.
 
 I.
 
 79
 Ralph Warren was the alleged leader of the cocaine trafficking conspiracy which involved his brothers Ned, Michael and Reginald, along with nine other individuals. The indictment alleged that the object of the conspiracy was for Ralph Warren to obtain multi-kilogram quantities of cocaine and distribute the cocaine from various locations in the Toledo area through his distribution network. All of the defendants in this case were convicted of the conspiracy alleged in count 2 of the 27-count indictment. All but Ned Warren were convicted of substantive offenses as well.
 
 
 80
 Sabrina Jenkins was Ralph Warren's girlfriend. Counts 11 and 12 arose out of a trip Jenkins and Warren took from Toledo to a house on Chalmers Street in Detroit on April 10, 1989. That morning, Reginald Peacock picked up Ralph Warren at Jenkins' Brookview apartment and the men drove together to a car rental agency at the airport where Warren rented a car. Peacock later told Robert McCoy, an unindicted co-conspirator who testified on behalf of the government, that he "took Ralph to the airport to make the move.... It means you make the move, to transact the business, to get the drugs."
 
 
 81
 Warren was observed entering and leaving the Chalmers house carrying a beige bag which appeared to be heavier when he left than when he entered. Apparently believing that he was being followed, Warren drove in an erratic manner from the Chalmers house, abruptly stopping on Beniteau Street, where both he and Jenkins fled from their car on foot. Only Warren was apprehended, and he did not have the beige bag with him. Officers found a beige bag containing two kilograms of cocaine on the second floor of an abandoned house on Beniteau. Warren later told McCoy that Jenkins had hidden the cocaine in a closet in an abandoned house and taken the bus back to Toledo. The rental car was searched and officers found a briefcase, items identifying both Warren and Jenkins, as well as a bank routing slip in the amount of $3,341.68 in Ned Warren's name.
 
 
 82
 Jenkins lived in an apartment on Brookview, where McCoy saw a scale and money, and observed Ralph Warren weighing drugs. Police recovered $13,000 in cash and a Browning 9mm revolver when they searched the apartment. Ten telephone calls were made from the apartment to the Chalmers house between March 1988 and April 1989, including a call on the evening of April 9, 1989.
 
 
 83
 Michael Warren sold cocaine to an undercover detective on four occasions. Two of the sales, charged in counts 5-8, took place at Ralph Warren's duplex on Melrose, a location within 1000 feet of an elementary school. The sale charged in count 4 took place after Michael Warren went to Dorr Street to get the cocaine. Ralph Warren rented an apartment on Dorr Street, from which 16 telephone calls were made to the Chalmers house between July 1988 and March 1989. Michael Warren delivered the purchase money from the count 4 sale to a house on West Woodruff where Vincent Sample lived. The sale charged in count 3 took place after Michael Warren told the detective that they had to go to a location where his brother would be.
 
 
 84
 The undercover detective negotiated a purchase of one kilogram of cocaine from Michael Warren in March 1989, but the purchase was not completed. Michael Warren told the detective that he would talk to his brothers to see if he could put it together. The detective and Warren went to a motel room where Warren attempted to reach Ralph and Reginald Warren by phone. Warren told the detective that he had talked to his brother Reginald the night before and was told he could have the cocaine. Eventually, Warren remembered that his brothers had left town to pick up their brother Ned Warren who was being released from prison that day. Michael Warren explained that Ned had provided $60,000 financing to get everybody started in the drug business, stating, "They gotta let him back in ... he's all ready in, see what I mean."
 
 
 85
 Ned Warren owned a house on Palmwood. McCoy and Reginald Peacock sold crack from the Palmwood house, both before and after Warren's release from prison, until the house caught fire. On May 10, 1989, undercover detectives attempted to purchase a half ounce of cocaine from Michael Brown. Brown told the detectives that they would have to "trip" to get the drugs, and he and Ned Warren drove away in Warren's car. Warren said that the men in the other car [the detectives] looked like the police and let Brown out of the car. Brown reported to the undercover detectives that Ned did not want to do the deal, and later said that "Ralph" was his main man and that he did not like dealing with "Peanut" [Ned].
 
 
 86
 Michael Brown lived on City Park across the street from Ralph Warren's property. Brown sold cocaine to undercover detectives on March 16, 1989, after going across the street to Warren's property (count 9). Brown sold cocaine again to the detectives on May 31, 1989 (count 14), and obtained the cocaine from Vincent Sample at a house on Norwood, the residence of Sample's girlfriend. Sample was present when the Norwood house was later searched. Police officers seized cocaine, a triple beam scale, a beeper, and miscellaneous papers, including envelopes addressed to Slim Goodies Records, Ralph Warren, and Vincent Sample.
 
 
 87
 Reginald Peacock owned a house on W. Delaware, and operated it as a crack house until it was shut down by the city of Toledo. Robert McCoy testified that he worked as a lookout for Peacock at the Delaware house, and then at the Palmwood house, and then on Melrose. Michael Brown told detectives that the "house on Melrose was Ralph's, and that's where the rocks are at and it is being run by Reggie Peacock." McCoy testified that Peacock obtained drugs from Ralph Warren at both Warren's Slim Goodies record store and at City Park. McCoy was with Peacock at the house on Delaware where he observed Peacock cooking up cocaine. Peacock gave McCoy a quarter ounce, and McCoy left the house. He immediately saw police officers and fled. The Delaware house was searched, and police found a mason jar with 103.79 grams of crack cocaine in it.
 
 
 88
 Reginald Warren is not a party to this appeal, but was found guilty of conspiracy after the second trial, and, after the first trial, of possession with intent to distribute cocaine and travel in interstate commerce to carry out this objective. These convictions stemmed from Warren's October 1989 trip to Detroit where he obtained a kilogram of cocaine. Michael Warren described his brother Reginald to an undercover detective stating that "all he does is deal dope all day long and night."
 
 II.
 Admissibility of Co-Conspirator Statements
 
 89
 Vincent Sample, Sabrina Jenkins and Ned Warren challenge the procedure employed by the district court in determining the admissibility of co-conspirator statements under Fed.R.Evid. 801(d)(2)(E). That rule provides that a statement is not hearsay if the statement "is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." At the conclusion of the government's case, the district court entered its Enright-Vinson ruling in which the court concluded that the government had shown
 
 
 90
 by at least a preponderance of evidence that the conspiracy alleged in Count 2 existed, that each of the Defendants has been shown to be a member of the alleged conspiracy, and that the co-conspirators' statements attributed by testimony of witnesses to one or more of the Defendants were made in the course of, and in furtherance of, the alleged conspiracy. Therefore I overrule the objection of each Defendant to this court's receiving into evidence each of the co-conspirators' statements attributed to a Defendant.
 
 
 91
 The procedure employed by the district court was approved by this court in United States v. Enright, 579 F.2d 980 (6th Cir.1978), and more recently in United States v. Barrett, 933 F.2d 355, 358 (6th Cir.1991); and United States v. Castro, 908 F.2d 85, 91 (6th Cir.1990). Contrary to defendants' assertions, the court was not required to conduct a mini-hearing on the admissibility of the co-conspirator statements prior to admitting those statements. United States v. Vinson, 606 F.2d 149, 152 (6th Cir.1979), cert. denied, 444 U.S. 1074, [100 S.Ct. 1020, 62 L.Ed.2d 756] (1980). Accord United States v. Fragoso, 978 F.2d 896, 899-901 (5th Cir.1992), cert. denied, [--- U.S. ----] 113 S.Ct. 1664 [123 L.Ed.2d 282] (1993); United States v. Hernandez, 829 F.2d 988, 994 (10th Cir.1987), cert. denied, 485 U.S. 1013, [108 S.Ct. 1486, 99 L.Ed.2d 714] (1988).
 
 
 92
 Defendants also contend that the district court erred in reaching the conclusions quoted above in its Enright-Vinson ruling.[1] Pursuant to Bourjaily v. United States, 483 U.S. 171, [107 S.Ct. 2775, 97 L.Ed.2d 144] (1987), the court properly considered the statements of co-conspirators as part of the evidence relevant to the existence of the conspiracy and the participation in it by the defendants and declarants. In addition, the court had before it independent evidence which corroborated the co-conspirator statements at issue. Based upon our review of the record, we conclude that the district court's findings that the alleged conspiracy did in fact exist and that the defendants and the declarants were members of the conspiracy were not clearly erroneous. United States v. Gessa, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc). Likewise, we find no error in the court's determination that the contested statements were made in the course and in furtherance of the conspiracy. United States v. Blakeney, 942 F.2d 1001, 1020-21 (6th Cir.1991), cert. denied, [--- U.S. ----] 112 S.Ct. 646 [116 L.Ed.2d 663] (1991); [--- U.S. ----] 112 S.Ct. 881 [116 L.Ed.2d 785] (1992) (quoting United States v. Rios, 842 F.2d 868, 874 (6th Cir.1988) (per curiam), cert. denied, 488 U.S. 1031, [109 S.Ct. 840, 102 L.Ed.2d 972] (1989)). We therefore affirm the Enright-Vinson ruling of the district court.
 
 III.
 Sufficiency of the Evidence
 
 93
 All defendants except Vincent Sample challenge the sufficiency of the evidence in support of their convictions. Our review of the evidence in support of a verdict is limited. We must view the evidence and all reasonable inferences therefrom in the light most favorable to the government. United States v. Morrow, 977 F.2d 222, 230 (6th Cir.1992) (en banc); United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991). We are not to weigh the evidence or determine the credibility of the witnesses. United States v. Warner, 971 F.2d 1189, 1195 (6th Cir.1992) (citing Glasser v. United States, 315 U.S. 60, 80 [62 S.Ct. 457, 469, 86 L.Ed. 680] (1942)). A conviction will be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560] (1979) (emphasis in original). The government need not exclude every reasonable hypothesis except that of guilt. United States v. Reed, 821 F.2d 322, 325 (6th Cir.1987). The test is the same whether the evidence is direct or circumstantial. United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989), and circumstantial evidence is entitled to the same weight as direct evidence. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1068, 1069, [106 S.Ct. 826, 828, 88 L.Ed.2d 798] 475 U.S. 1017 [106 S.Ct. 1200, 89 L.Ed.2d 314] (1986).
 
 
 94
 In order to establish a drug conspiracy, the government must prove "that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it." Barrett, 933 F.2d at 359 (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)).
 
 
 95
 The government may demonstrate that a defendant had the requisite knowledge by showing that defendant knew the essential object of the conspiracy. The government need not show that a defendant participated in all aspects of the conspiracy; it need only prove that defendant was a party to the general conspiratorial agreement.... Further, "[t]he connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt."
 
 
 96
 Barrett, 933 F.2d at 359 (citations omitted).
 
 
 97
 Once a conspiracy is shown to exist, the "Pinkerton doctrine [Pinkerton v. United States, 328 U.S. 640, 646-47, 66 S.Ct. 1180, 1183-84, 90 L.Ed.2d 1489 (1946) ] permits the conviction of a coconspirator for the substantive offense of other coconspirators committed during and in furtherance of the conspiracy." United States v. Christian, 942 F.2d 363, 367 (6th Cir.1991), cert. denied, [--- U.S. ----] 112 S.Ct. 905, [116 L.Ed.2d 806] (1992) (quoting United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied, [--- U.S. ----] 111 S.Ct. 2038 [114 L.Ed.2d 122] (1991)). This doctrine allows conspirators to be punished "for crimes committed by a coconspirator that are not the object of the conspiracy itself, but are foreseeable and in furtherance of the conspiracy." Christian, 942 F.2d at 367 (emphasis in original).
 
 
 98
 Because there is no direct evidence demonstrating his presence or participation in the actions of Michael Warren and Michael Brown, Ralph Warren contends that the evidence was not sufficient to convict him of the offenses charged in counts 3-8, based on four drug sales made by Michael Warren; and counts 9 and 14, based on the drug sales made by Michael Brown. Each of these challenged counts charged possession of cocaine with intent to distribute, 21 U.S.C. Sec. 841; and aiding and abetting, 18 U.S.C. Sec. 2.
 
 
 99
 Based on the facts pertinent to counts 3-9 and 14 and the governing standard of review, we must affirm Warren's convictions. Although Warren did not personally make the cocaine sales charged in these counts, the evidence supports a finding that he aided and abetted the offenses. " 'To be found guilty of the crime of aiding and abetting a criminal venture, a defendant must associate himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed.' " United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied, [--- U.S. ----] 111 S.Ct. 2038 (1991) (quoting United States v. Quinn, 901 F.2d 522, 530 n. 6 (6th Cir.1990)). In Martin, the court affirmed the conviction of a lookout for another in possession of cocaine, finding that the lookout associated himself with the criminal venture, participated in it, and sought by his acts to make it succeed. Based on the evidence in this case, a reasonable juror could conclude that Warren supplied the drugs that were sold, or provided the location from which drugs were sold. This is sufficient to support aiding and abetting liability. Moreover, under the Pinkerton doctrine discussed above, Warren can permissibly be convicted for actions of co-conspirators so long as they are foreseeable and in furtherance of the conspiracy. A rational juror could certainly conclude that the cocaine sales of Michael Warren and Michael Brown were both foreseeable to Ralph Warren and in furtherance of the conspiracy. We therefore affirm Warren's convictions on these counts.
 
 
 100
 Sabrina Jenkins and Reginald Peacock challenge the sufficiency of the evidence in support of their convictions on count 11, charging them with possession of cocaine with intent to distribute and aiding and abetting this offense, based upon the cocaine obtained by Ralph Warren on Chalmers Street. Both claim that McCoy's testimony is the only link between them and the cocaine, and challenge that testimony as incredible and unsubstantial.
 
 
 101
 Even the uncorroborated testimony of an accomplice may support defendants' convictions. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 [U.S.] 1068, 1069 [106 S.Ct. 826, 828, 88 L.Ed.2d 798, 800]; 475 U.S. 1017 [106 S.Ct. 1200, 89 L.Ed.2d 314] (1986). However, evidence independent of McCoy's testimony supports the count 11 convictions of both Peacock and Jenkins. Peacock's assistance to Warren was observed by the surveillance team on April 10. Jenkins' assistance reasonably can be inferred from the sequence of events on April 10, specifically, the disappearance of the beige bag after Warren and Jenkins fled from the rental car on foot. Defendants' attacks on McCoy's credibility are challenges to the quality of the government's evidence, not the sufficiency of the evidence. "[A]ny argument relating to credibility of the government's witnesses is irrelevant to our determination of the sufficiency of the evidence." United States v. Sanchez, 928 F.2d 1450, 1457-58 (6th Cir.1991). We conclude that the evidence is sufficient to sustain the count 11 convictions of both defendants. United States v. Martinez, 981 F.2d 867 (6th Cir.1992), cert. denied, [--- U.S. ----], 113 S.Ct. 1874 [123 L.Ed.2d 493] (1993).
 
 
 102
 Michael Brown, Michael Warren, Ned Warren, Reginald Peacock[2] and Sabrina Jenkins challenge the sufficiency of the evidence in support of their convictions for the conspiracy charged in count 2. We have carefully reviewed the record as it pertains to these five defendants, mindful of the settled rule that a given conspirator " 'need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement.' " United States v. Hodges, 935 F.2d 766, 773 (6th Cir.), cert. denied, [--- U.S. ----, ----] 112 S.Ct. 251, 317 (1991) (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986) (citation omitted)). When viewed in the light most favorable to the government, the evidence in this case supports the jury's findings that defendants were participants in the conspiracy charged in count 2. We therefore affirm their convictions. United States v. Warner, 971 F.2d 1189, 1195 (6th Cir.1992); United States v. Sturman, 951 F.2d 1466, 1474 (6th Cir.1991), cert. denied, [--- U.S. ----] 112 S.Ct. 2964 [119 L.Ed.2d 586] (1992); Hodges, 935 F.2d at 772-73.
 
 IV.
 Evidentiary Issues
 A. Limitations on Cross-Examination
 
 103
 Defendants challenge the district court's limitations on the cross-examination of various witnesses. The courts evidentiary rulings will not be reversed absent a clear showing of abuse of discretion. United States v. Moreno, 933 F.2d 362, 375 (6th Cir.), cert. denied, [--- U.S. ----], 112 S.Ct. 265, [116 L.Ed.2d 218] (1991); United States v. Hickey, 917 F.2d 901, 904 (6th Cir.1990). A trial court may limit the cross-examination of a witness. United States v. Brown, 946 F.2d 1191, 1195 (6th Cir.1991). The Sixth Amendment does not give criminal defendants absolute control over cross-examination. Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir.), cert. denied, 493 U.S. 831 [110 S.Ct. 103, 107 L.Ed.2d 67] (1989). Even where the core values of the Sixth Amendment are arguably invaded by a denial of cross-examination, the standard of review is abuse of discretion, abuse being found where the district court has interfered with the defendant's constitutional rights. Id. Where it is merely the extent of cross-examination that is limited, the trial court retains "a much wider latitude of discretion...." Id. at 167. While a court's limitation on the cross-examination of the government's principal witness deserves careful scrutiny, the test remains whether the jury had sufficient information to assess the defense theory. Id. We review defendants' challenges to the district court's rulings under these settled principles.
 
 1. FBI Agent Brinker
 
 104
 FBI Agent Brinker participated in the surveillance of Warren and Jenkins on their trip to Detroit. Brinker left the team on Chalmers because he believed that Warren had spotted him. By the time Brinker rejoined the team, Warren and Jenkins had fled.
 
 
 105
 Contending that he was entitled to pursue evidence probative of Brinker's alleged bias, Ralph Warren sought to cross-examine Brinker concerning statements Brinker had made regarding a briefcase seized during the search of the residence of one of the defendants who pled guilty before the first trial. Based on an inventory statement by another officer, Brinker stated in sworn testimony that a powdery white residue in the briefcase was cocaine. The Toledo Police Lab had determined that the substance was baby powder, but this report was not delivered to the Federal Drug Task Force. The magistrate judge concluded that Brinker had relied in good faith on information that had been communicated by another law enforcement officer. On review, the district court stated that Brinker's "mistake was more of an unfortunate oversight than a valid basis for questioning his credibility."
 
 
 106
 The district court refused to allow Warren to directly cross-examine Brinker with his mistaken testimony about the baby powder but permitted Warren to ask Brinker whether, in prior testimony regarding another defendant, he had made a mistake. The court cautioned that an affirmative answer would end the matter, but that a negative answer would allow further inquiry. Warren asked the permitted question, and Brinker acknowledged a mistake had been made.
 
 
 107
 It bears emphasis that the area which Warren sought to explore did not concern Warren himself or even one of the defendants in the trial. Warren makes no serious attempt at demonstrating how Brinker's alleged bias interfered with his testimony. Nor does Warren point to any aspect of Brinker's testimony which was significant to the government's case against him.
 
 
 108
 In United States v. Johnson, 25 Fed.Rules Evid.Serv. 1444 (4th Cir.1988) (per curiam), the court found no abuse of discretion in the trial court's limitation on the cross-examination of the undercover police officer witness based on evidence that the officer may have misidentified a defendant in an unrelated case and may have testified to matters he did not personally observe. The court stated that trial courts retain wide latitude, even insofar as the Confrontation Clause is concerned, to impose reasonable limits on cross-examination, based on concerns about "harassment, prejudice, confusion of the issues ... or interrogation that is repetitive or only marginally relevant." Id. at 1448 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 [106 S.Ct. 1431, 1435, 89 L.Ed.2d 674] (1986)). Noting that the proposed inquiry did not relate directly to the issues in the case, the court stated that the officer's misidentification in the unrelated case and his effort to bolster his testimony were relevant to bias "only in the general sense of demonstrating that, when testifying against a defendant whom [the officer] was responsible for bringing to trial, [the officer] is pro-prosecution." Id. at 1449.
 
 
 109
 Ultimately, the trial judge would have had to admit considerable testimony on the Jones case before the jury could have fairly assessed the import of the Jones case on [the officer's] truthfulness. To avoid distracting the jury with this "side-show," the trial judge limited the cross-examination to general questions on whether [the officer] had misidentified a defendant in the past. The trial judge acted within his discretion under [Fed.R.Evid.] 608(b).
 
 
 110
 Id. at 1451.
 
 
 111
 We agree with the analysis in Johnson, and hold that the district court did not abuse its discretion in limiting the cross-examination of Agent Brinker. Accordingly, we decline to reverse Warren's conviction on this basis.
 
 2. ATF Agent Zellers
 
 112
 Ralph Warren claims he was denied due process and compulsory process by the trial court's refusal to allow him to cross-examine ATF Agent Zellers or FBI Agents Brinker and Nelson regarding Zellers' grand jury testimony. Zellers had participated in the surveillance of Warren and Jenkins in Detroit, and had testified before the grand jury that Warren and Jenkins ran in opposite directions when they left their car on Beniteau. It is undisputed that Zellers was not present to make this observation. In voir dire testimony, Zellers said the source of this information was Agent Brinker. However, Brinker, who was not present when the defendants fled on Beniteau, denied in voir dire testimony that he had given this information to Zellers. Agent Nelson, also in voir dire testimony, stated that he could not recall having given this version of the events to Zellers or any other agents. Nelson testified at trial that "Mr. Warren exited the vehicle still carrying the same bag, and they started to run behind the vacant house."
 
 
 113
 Neither Zellers nor Nelson claimed that Nelson was the source of Zellers' testimony to the grand jury. Based on these facts, the district court correctly concluded that Zellers' grand jury testimony could not be offered for impeachment. The testimony was hearsay, and the district court properly ruled it inadmissible. We find no abuse of discretion.
 
 3. Robert McCoy
 
 114
 Ralph Warren and Reginald Peacock contend that the district court erroneously curtailed their cross-examination of Robert McCoy, one of the government's chief witnesses. Defendants' cross-examination of McCoy was extensive, eliciting the facts that he cut a good deal for himself in testifying for the government; started abusing marijuana, crack, cocaine and alcohol within a month of his release from prison in February 1988; would on occasion short his drug customers or his suppliers so that he could buy drugs for himself; would lie, cheat and hustle to get what he wanted; held back information when questioned by the police about the Ralph Warren organization; bought marijuana with federal funds within two days of his release into the Federal Witness Protection Program; and that he knew he faced possible life imprisonment if he did not cut a deal with the government. McCoy testified on direct that he was sentenced to only two years for pleading guilty to drug charges in state court.
 
 
 115
 A topic which defendants were not permitted to explore to their satisfaction concerned statements McCoy allegedly made while incarcerated in the Lucas County Jail in late 1989. McCoy was asked whether he had told an attorney who had interviewed him there that a "snitch" in the county jail "could take a name or piece of information and make up a story that would be believable." He denied making such a statement. When asked whether he said that a snitch who developed a line of testimony from a little piece of information could be able to work a deal with the government, McCoy said "I have seen it done, but I have not seen it done with the Government."
 
 
 116
 The attorney who had interviewed McCoy at the jail testified that he had had the disputed conversation with McCoy. Michael Jackson, the attorney's client, also testified. Warren sought to elicit testimony to the effect that McCoy had told Jackson that McCoy was pressured by police into giving information about drug trafficking, and would do whatever he had to do in order to get out of the problems he was in. Because McCoy had not been asked whether he had ever made such statements, the district court disallowed this line of questioning. The district court also refused to allow defendants to recall McCoy. These two rulings are contested by Ralph Warren and Peacock.
 
 
 117
 We have no doubt that the jury was adequately informed of McCoy's ethical failings and his willingness to lie, cheat and hustle to get what he wanted, so that the defense theory was not prejudiced by the limitations imposed on the examination of Michael Jackson or the court's refusal to allow defendants to recall McCoy for further cross-examination. " '[O]nce cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied.' " Dorsey v. Parke, 872 F.2d 163, 167 (6th Cir.), cert. denied, 493 U.S. 831, [110 S.Ct. 103, 107 L.Ed.2d 67] (1989) (quoting United States v. Falsia, 724 F.2d 1339, 1343 (9th Cir.1983)); United States v. Brown, 946 F.2d 1191, 1195-96 (6th Cir.1991) (where defense counsel was able to effectively cross-examine the government's key witness and to disclose facts relevant to the witness' credibility, trial court did not abuse discretion in limiting cross-examination). The jury had sufficient information in this case. We find no abuse of discretion in the district court's evidentiary ruling at issue.
 
 
 118
 B. Hearsay Evidence of Unauthorized Checking Account Withdrawals
 
 
 119
 The searches of the residences of Sabrina Jenkins and Ralph Warren resulted in the seizure of over $27,000 in cash. At trial, Warren sought to counter the inference that could be drawn from the seizure of thousands of dollars in cash by presenting evidence that he had a legitimate distrust of banks based upon the fact that two checking accounts he maintained had been the subject of unauthorized withdrawals.
 
 
 120
 Warren claims that the district court refused to allow presentation of this evidence. This assertion is only partially true. The district court prohibited Warren from presenting the testimony of the police officer who investigated the 1986 withdrawals from Warren's personal account, but allowed Warren to present the guilty plea of the Slim Goodies employee who withdrew funds from the Slim Goodies account, thus allowing a basis from which to argue that Warren had a distrust of banks.
 
 
 121
 Warren does not dispute that the testimony ruled inadmissible by the court was hearsay. Moreover, Warren was not foreclosed by the court's ruling from pursuing the defense theory as to which this testimony was claimed to be relevant. On these facts, we find no abuse of discretion in the district court's ruling.
 
 C. Alleged Use of Perjured Testimony
 
 122
 FBI Agent Nelson was one of the Detroit agents called upon to assist in the surveillance of Warren and Jenkins during their trip to the Chalmers house. Nelson testified that Warren's beige bag appeared to be light when Warren entered the house, but sagged in the middle when Warren left the house. Nelson then followed Warren as he drove erratically and at high speeds, apparently trying to evade his followers. The testimony challenged by Warren does not concern these crucial observations but, rather, Nelson's testimony regarding his distance from Warren when Warren abruptly parked his car on Beniteau and fled with Jenkins. At the first trial, Nelson testified that he was approximately 200-300 yards from Warren's car when they fled. At the second trial, Nelson testified that he was mistaken in his earlier testimony, and that he was ten yards away. Warren now contends that Nelson lied under oath as to a material matter, either at the first trial or at the second, and that the government's knowing use of perjured testimony violated his right to due process under the law.
 
 
 123
 In United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir.1989), this court stated:
 
 
 124
 The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.... In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.... The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.
 
 
 125
 (Citations omitted.)
 
 
 126
 We cannot characterize the testimony at issue as material. The evidence in the case fully supports the conclusions that Warren drove his rental car to Chalmers and then to Beniteau, that he left the car on foot, that he was later apprehended in the vicinity of the Beniteau location, and that the beige bag that he was seen carrying into and out of the Chalmers house was neither on his person when he was apprehended nor in his rental car. Under these facts, the precise distance between Nelson's car and Warren's car when the chase ended on Beniteau is not material. We conclude that there is no reasonable likelihood that Nelson's estimate of the distance could have affected the judgment of the jury. United States v. Hawkins, 969 F.2d 169, 175-76 (6th Cir.1992) (per curiam), cert. denied, [--- U.S. ----] 113 S.Ct. 1021 [122 L.Ed.2d 168] (1993); United States v. O'Dell, 805 F.2d 637, 642 (6th Cir.1986), cert. denied, 484 U.S. 859 [108 S.Ct. 170, 98 L.Ed.2d 124] (1987).[3]
 
 
 127
 We find that Warren has not sustained his burden under Lochmondy, and that his claim of denial of due process is without merit.[4]
 
 V.
 Denial of Severance
 
 128
 Michael Brown asserts that his trial should have been severed from that of his co-defendants. His claim is based on Fed.R.Crim.P. 14, which provides that the trial court can grant a severance when justice requires to avoid prejudice to a defendant. Brown did not preserve this argument because he did not renew his motion for severance at the close of the evidence. United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir.1991), cert. denied, [--- U.S. ----] 112 S.Ct. 2964 [119 L.Ed.2d 586] (1992). Even if Brown had preserved this claim, however, it is without merit. A denial of a severance motion is reversed only if there was an abuse of discretion by the trial judge. Id. There was no abuse of discretion in this case.
 
 
 129
 In Zafiro v. United States, [--- U.S. ----] 113 S.Ct. 933 [122 L.Ed.2d 317] (1993), the Supreme Court stated that Rule 14 does not require severance even if prejudice is shown. Rather, the rule leaves to the district court's sound discretion the tailoring of any relief to be granted. "We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. [at ----, 113 S.Ct.] at 938.
 
 
 130
 This court has stated that a defendant seeking reversal of a conviction because of the trial court's refusal to sever must show prejudice that could only be rectified by separate trials. United States v. Sivils, 960 F.2d 587, 594 (6th Cir.), cert. denied, [--- U.S. ----] 113 S.Ct. 130 [121 L.Ed.2d 84] (1992). The defendant must "demonstrate that the jury was unable to separate and treat distinctively evidence relevant to each particular defendant." Id. As Brown concedes, the district court instructed the jury to consider the evidence separately as to each defendant. That the jury did so is evident from the fact that the jury acquitted two defendants of the conspiracy alleged in count 2, and also acquitted other defendants of substantive counts in the indictment. "A jury is presumed capable of sorting and considering evidence separately." Sturman, 951 F.2d at 1476 (citing United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987)). The jury clearly did so in this case. Accordingly, we decline to reverse Brown's conviction on this basis.
 
 VI.
 Sentencing Guideline Issues
 
 131
 A. Amounts of Cocaine Attributed to Defendants
 
 
 132
 1. Negotiated Sale of One Kilogram Not Consummated
 
 
 133
 Michael Warren challenges the inclusion of one kilogram of cocaine based on his attempt to make a sale in this amount to undercover detectives on the day that Ned Warren was released from prison. The district court's inclusion of amounts of cocaine involved in an uncompleted transaction was governed by U.S.S.G. Sec. 2D1.4 (1991). Either intent to sell or reasonable capability of producing the cocaine is sufficient to sustain the inclusion of the kilogram of cocaine at issue. United States v. Gessa, 971 F.2d 1257, 1265 (6th Cir.1992) (en banc). The district court found both.
 
 
 134
 The recording of the conversation between Warren and the detective clearly reveals an intent to sell. Warren's capability of producing a kilogram of cocaine is supported by evidence that both Ralph and Reginald Warren possessed such amounts. Based upon our review of the record, we conclude that the district court's findings that Michael Warren had the intent and the capability to sell a kilogram of cocaine were not clearly erroneous, and that inclusion of the kilogram of cocaine at issue was required under U.S.S.G. Sec. 2D1.4.[5] United States v. Nichols, 979 F.2d 402, 414 (6th Cir.1992), petition for cert. filed, Apr. 23, 1993 (amount of drugs in negotiated purchase included where defendant had the intent to purchase and sufficient money for that purpose).
 
 
 135
 2. Amounts of Cocaine Attributable Under Guideline Sec. 1B1.3
 
 
 136
 Ned Warren contests the inclusion of certain amounts of cocaine which the district court found should be attributed to him for purposes of calculating his base offense level. The relevant conduct required to be considered by the district court at the time of sentencing was that set forth in U.S.S.G. Sec. 1B1.3 (1989) and its accompanying commentary. That guideline defines relevant conduct to include acts or omissions for which the defendant would be otherwise accountable, that occurred during the offense of conviction, or were in furtherance of the offense. Application note 1 states that conduct for which a defendant is "otherwise accountable" includes conduct of others in furtherance of jointly undertaken criminal activity that was reasonably foreseeable by the defendant.
 
 
 137
 A district court's findings of fact on the amount of cocaine for which a defendant is to be held accountable are accepted by this court unless the findings are clearly erroneous. United States v. Wilson, 954 F.2d 374, 376 (6th Cir.1992); United States v. Walton, 908 F.2d 1289, 1300-1301 (6th Cir.), cert. denied, 498 U.S. 906, 989, 990, [111 S.Ct. 273, 530, 532, 112 L.Ed.2d 229, 541, 542] (1990). Further, we give deference to the district court's application of the sentencing guidelines to the facts. Wilson, 954 F.2d at 376 (citing 18 U.S.C. Sec. 3742(e)).
 
 
 138
 Ned Warren contends that amounts of cocaine involved in the conspiracy's activities prior to his release from prison cannot be attributed to him because he had not reentered the conspiracy until that date. However, on that date, Michael Warren described his brother Ned's involvement with the drug business, stating that Ned Warren had provided $60,000 to get everybody started in the drug business. "They gotta let him back in ... he's all ready in, see what I mean." (Emphasis added.) Conduct of co-conspirators, even past conduct, can be considered reasonably foreseeable to a particular defendant if that defendant has demonstrated a "substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct." United States v. Edwards, 945 F.2d 1387, 1393-94 (7th Cir.1991), cert. denied, [--- U.S. ----], 112 S.Ct. 1590 [118 L.Ed.2d 308] (1992). The district court considered Warren's role as start-up financier of the operation to be strong evidence of his responsibility for the cocaine involved in the conspiracy. This finding is not clearly erroneous.[6] Providing $60,000 to get everybody started in the drug business is significant evidence of both the scope of the joint criminal activity in which Warren was involved, and the foreseeability of the amount of drugs in question.
 
 
 139
 Ned Warren also challenges the court's inclusion of all cocaine in crack form, contending that he had no knowledge that crack was involved in the conspiracy. Whether or not a defendant had actual knowledge of particular amounts of drugs involved in joint criminal activity is not controlling if it is demonstrated by a preponderance of the evidence that it was reasonably foreseeable to the defendant that the drugs would be involved. United States v. Sims, 975 F.2d 1225, 1244 (6th Cir.1992), cert. denied, [--- U.S. ----, ----, ----], 113 S.Ct. 1315, 2354, 2365 [122 L.Ed.2d 702] (1993). The district court carefully reviewed the evidence, noting in particular the fact that Reginald Peacock and Robert McCoy sold crack out of Ned Warren's house on Palmwood, both prior to and after his release from prison. The court concluded that Ned Warren had knowledge of or could foresee the distribution of the entire amount of cocaine, including crack cocaine, attributed to the conspiracy. This finding is not clearly erroneous.
 
 
 140
 B. Michael Warren: Obstruction of Justice and Acceptance of Responsibility
 
 
 141
 Michael Warren claims the district court erred in applying the two-point enhancement for obstruction of justice as set forth in U.S.S.G. Sec. 3C1.1 in light of his admission of guilt of the offenses charged in counts 3-8. Warren acknowledges that he denied his guilt of the conspiracy charged in count 2. The district court imposed the two-point enhancement for obstruction of justice because Warren denied to the probation officer preparing the presentence report that his brothers were the sources of the cocaine he sold. The district court did not impose the two-point enhancement simply because Warren denied participation in the conspiracy.
 
 Guideline section 3C1.1 provides:
 
 142
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 143
 Application note 3(h) states that providing materially false information to a probation officer in respect to a presentence investigation is an example of the type of conduct to which the enhancement applies. Application note 5 defines "material" information as information that, "if believed, would tend to influence or affect the issue under determination."
 
 
 144
 In United States v. Gardiner, 955 F.2d 1492, 1499-1500 (11th Cir.1992), the court concluded as a matter of law that the defendant's presentence investigation denial of certain facts relevant to his conviction could not justify an obstruction of justice enhancement. "[A] pre-sentence assertion cannot be material to sentencing if the assertion's truth requires the jury's verdict to be in error." See United States v. Williams, 952 F.2d 1504, 1515 (6th Cir.1991) (defendant's lies to FBI agents could not have impeded investigation because agents already had the facts).[7]
 
 
 145
 The logic of Gardiner appears applicable here. As the government states, Warren's presentence investigation assertions are at odds with the jury's finding of guilty for both Ralph and Michael Warren. A comparison of counts 3-8 with the overt acts charged in count 2 of the indictment supports this concession. Consequently, it appears here, as it did in Gardiner, that the truth of defendant's presentence assertions could logically require the conclusion that the jury's verdict is in error. Since neither the probation officer preparing the presentence report nor the district court was free to ignore the jury's verdict, we must question how Warren's presentence assertions were material to the issue under determination.
 
 
 146
 We cannot state with certainty on the record before us that the enhancement for obstruction of justice was clearly erroneous. The district court made no findings with respect to the materiality of the precise statements found to be untruthful. We thus vacate Michael Warren's sentence and remand to give the district court an opportunity to develop on the record the basis for a conclusion that the statements were "material," as that term is defined in application note 5, and the precise reasons for its decision to apply the obstruction of justice enhancement. United States v. Range, 982 F.2d 196, 198 (6th Cir.1992), cert. denied, [--- U.S. ----, 113 S.Ct. 3042, 125 L.Ed.2d 728] (1993).
 
 
 147
 Michael Warren also contends that the district court erred in refusing to reduce his offense level under U.S.S.G. Sec. 3E1.1 for his claimed acceptance of responsibility. "Acceptance of responsibility is a factual determination left to the sound discretion of the district court, and the court's determination on this issue is not to be disturbed unless clearly erroneous." United States v. Nichols, 979 F.2d 402, 414 (6th Cir.1992), petition for cert. filed, 1993. We find no error in the district court's refusal to grant Warren a two-level reduction for acceptance of responsibility. United States v. Williams, 952 F.2d 1504, 1517 (6th Cir.1991); United States v. Williams, 940 F.2d 176, 181-83 (6th Cir.), cert. denied, [--- U.S. ----] 112 S.Ct. 666 [116 L.Ed.2d 757] (1991).
 
 
 148
 C. Ned Warren: Manager, Supervisor Enhancement
 
 
 149
 Ned Warren claims that the district court erred in enhancing his offense level under U.S.S.G. Sec. 3B1.1(c) for his role as a start-up financier and manager or supervisor. Warren's argument on this point neither raises fact issues nor cites to legal authority.
 
 
 150
 The district court's determination under section 3B1.1(c) is a factual one which is reviewed under the clearly erroneous standard. United States v. Akrawi, 982 F.2d 970, 974 (6th Cir.1993) (citing United States v. Williams, 894 F.2d 208, 213-14 (6th Cir.1990)). The district court carefully reviewed the evidence adduced at trial and the contents of the presentence report prior to making its findings regarding Warren's role in the offense. Based on our review of the record, we conclude that the district court's findings are not clearly erroneous. Akrawi, 982 F.2d at 974. We therefore affirm Warren's sentence.
 
 Conclusion
 
 151
 For the reasons stated, we AFFIRM the convictions of all defendants. We AFFIRM the sentence of Ned Warren, III. We VACATE the sentence of Michael Warren and REMAND for RESENTENCING, consistent with this opinion.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The district court subsequently vacated Warren's conspiracy conviction because of his continuing criminal enterprise conviction. United States v. Davis, 809 F.2d 1194, 1204-5 (6th Cir.), cert. denied, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987) ("Congress did not intend continuous criminal enterprise and conspiracy charges to be subject to double punishment.")
 
 
 [2]
 Sample advances no basis for his contention that the informant's testimony would have aided his defense. Peacock chose not to submit any questions to the informant, and cannot now rely on this failure to support the proposition that the informant's testimony might have been helpful to him. Moreover, the informant was in a position to hear only one statement by Brown about Peacock, that Peacock ran the crack house on Melrose. This statement was directly corroborated by the testimony of unindicted co-conspirator Robert McCoy
 
 
 [3]
 Section 841(b), in turn, imposes penalties based on the amount of drugs involved in the conviction. Because Ralph Warren's conviction on count 8 involved 112 grams of cocaine, subsection (C) of Sec. 841(b)(1) would apply if there were no other statutory directives to consider, and would result in a 60-year sentence
 
 
 [4]
 Warren cites Dunn v. Simmons, 877 F.2d 1275 (6th Cir.1989), cert. denied, 494 U.S. 1061, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990), in support of the suggestion that he should benefit from the absence of a complete stenographic record of the 1981 trial. This is contrary to 21 U.S.C. Sec. 851(c). Moreover, Dunn has been disapproved by the Supreme Court in a case which upheld a statutory sentence enhancement procedure which operates to impose the burden of producing evidence of the invalidity of a prior conviction on the criminal defendant, even if records essential to a determination of the claim may have been destroyed or lost. Parke v. Raley, --- U.S. ----, ---- - ----, 113 S.Ct. 517, 523-25, 121 L.Ed.2d 391 (1992)
 
 
 [5]
 The district court held a hearing and thoroughly investigated Warren's claims, finding that no claim of ineffective assistance of counsel nor any other constitutional claim attacking the validity of the 1981 conviction had ever been made prior to the sentencing hearing in 1991. The court noted that Warren did not question the competency of his 1986 counsel and that the 1986 guilty plea was entered at a time when the stenographic notes of the 1981 trial were presumably intact
 
 
 [6]
 Section 851(e) has been held to be constitutional. United States v. Williams, 954 F.2d 668, 673 (11th Cir.1992); Cirillo v. United States, 666 F.Supp. 613, 616 (S.D.N.Y.1987)
 
 
 [7]
 There is no merit to Peacock's contention that because he was acquitted on the substantive count involving the mason jar of crack cocaine, that cocaine should not have been included in the total amount of cocaine attributable to him. United States v. Moreno, 933 F.2d 362, 374 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). There is likewise no merit to his claims that he had no knowledge of the cocaine, and that there was no proof that the cocaine was part of the Ralph Warren conspiracy. The district court's findings on these issues are supported by a preponderance of the evidence and are not clearly erroneous
 
 
 [8]
 In United States v. Nichols, 979 F.2d 402, 410-11 (6th Cir.1992), petition for cert. filed, Apr. 23, 1993, two members of this court expressed in dicta their view that evidence illegally seized during the investigation or arrest of the crime of conviction should not be considered at sentencing. Unlike those judges, however, we are unwilling to assume that use of illegally obtained evidence will result in "a corresponding decrease in the deterrent effect of the exclusionary rule on unconstitutional law-enforcement practices." Id. 979 F.2d at 411
 A decision of one panel of this court binds all other panels. United States v. Gilliam, 979 F.2d 436, 437 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1856, 123 L.Ed.2d 478 (1993). Consequently, no panel may overrule a published opinion of a previous panel. Watts v. Burkhart, 978 F.2d 269, 270-71 n. 1 (6th Cir.1992). This rule does not extend to dicta, however. Stockler v. Garratt, 893 F.2d 856, 859 n. 2 (6th Cir.1990).
 
 
 [9]
 Sample also claims that because he was convicted of the lesser included offense of possession of the cocaine charged in count 18, the jury necessarily found he had no intent to distribute this cocaine, and this amount could not be added to the total amount charged in the conspiracy to distribute. This argument has no merit. The standard of proof applicable to sentencing is preponderance of the evidence. The district court found by a preponderance of the evidence that the cocaine at issue, part of which had been cooked into cocaine base, was possessed with intent to distribute. This finding is not clearly erroneous
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Jenkins claims that her attorney's failure to object to the admissibility of the co-conspirator statements constituted ineffective assistance of counsel. "We will consider an ineffective assistance of counsel claim on direct appeal of a criminal conviction only when the record is adequate to assess the merits of the defendant's allegations." United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). The record is adequate in this case. The district court made specific findings regarding Jenkins' participation in the conspiracy in its Enright-Vinson ruling. We conclude that Jenkins cannot demonstrate prejudice resulting from her attorney's failure to object to co-conspirator statements because those statements were properly found to be admissible
 
 
 [2]
 Peacock claims that because no overt act alleged in count 2 of the indictment pertaining to him was proved beyond a reasonable doubt, his conspiracy conviction under 21 U.S.C. Sec. 846 cannot stand. This claim has no merit. United States v. Nelson, 922 F.2d 311, 317-18 (6th Cir.1990), cert. denied, [--- U.S. ----], 111 S.Ct. 1635 [113 L.Ed.2d 731] (1991); United States v. Silva, 846 F.2d 352, 358 n. 4 (6th Cir.), cert. denied, 488 U.S. 941 [109 S.Ct. 365, 102 L.Ed.2d 354] (1988); United States v. Dempsey, 733 F.2d 392, 395-96 (6th Cir.), cert. denied, 469 U.S. 983 [105 S.Ct. 389, 83 L.Ed.2d 323] (1984)
 
 
 [3]
 Warren has not sustained his burden of demonstrating the falsity of Nelson's testimony at the second trial, in light of the testimony regarding the distance of the Kercheval-Beniteau intersection from Warren's car. Nor has Warren made any showing that the government knowingly presented perjured testimony
 
 
 [4]
 We reject Warren's contention that the cumulative effect of the evidentiary rulings produced a trial setting that was unfair or denied him due process of law
 
 
 [5]
 We note that exclusion of one kilogram of cocaine would have no effect on the offense level under U.S.S.G. Sec. 2D1.1(c) because the total amount of cocaine would still fall within the 15-50 kilogram range of level 34
 
 
 [6]
 We note that exclusion of the 5.93 kilograms which Warren contends predated his reentry into the conspiracy would have no effect on the offense level, because the total amount would still fall within the 15-50 kilogram range of level 34
 
 
 [7]
 In United States v. Dunnigan, [--- U.S. ----, ----], 113 S.Ct. 1111, 1117 [122 L.Ed.2d 445] (1993), the Supreme Court held that the obstruction of justice enhancement could be permissibly based on the defendant's perjured testimony at trial, rejecting the contention that such an enhancement would undermine the defendant's right to testify. The Court did not discuss the materiality requirement of comment 5, but specifically noted that the district court's finding that the testimony at issue concerned "material matters ... that were designed to substantially affect the outcome of the case ..." met the factual predicates of a perjury offense. (Emphasis in original.)